GILBERT LAWS, PLAINTIFF IN ERROR, v. NICHOLAS B. VINCENT, DEFENDANT IN ERROR.

1. County Seat: CONTEST OVER LOCATION: PLEADING. In a proceeding in the district court to contest an election held for the purpose of locating a county seat, it is competent for the contestee or any other party to the action to plead by way of answer any facts which would show a want of jurisdiction on the part of the county commissioners to call said election.

2. ———: ———: SPECIAL FACTS: JURISDICTION OF COMMISSIONERS. In 1871 an election was held in H. county under the provisions of an act of the legislature, for the location of a county seat and the election of county officers. A majority of the votes cast were in favor of "A" as the county seat. The

returns of the election were duly certified to and filed by the secretary of state, but the county officers elected failed to qualify. In 1872 the acting governor of the state issued his proclamation calling an election for the election of county officers and the location of a county seat. At this election county officers were elected who subsequently qualified. There being no choice as to the location of the county seat two other successive elections were held resulting in an apparent majority for M, but the final vote was not canvassed by the county clerk, and the result of said election was not officially declared. The county offices were not held, nor were the records kept at any one place until the year 1875. From that time to the present the county offices and records have all been kept, and the district courts have all been held, at "A." In 1881 the board of county commissioners, without the presentation of a petition therefor, called an election for the location of a county seat, *Held*, They had no authority or jurisdiction to call said election.

ERROR to the district court for Harlan county. Tried below before POUND, J., sitting for GASLIN, J.

*W. S. Morlan* and *T. M. Marquett*, for plaintiff in error.

*John Dawson* and *W. J. Lamb*, for defendant in error.

REESE, J.

This is a proceeding to contest an election held in Harlan county in the year 1881 upon the question of the location of the county seat of said county. The record discloses, among other things, the following facts:

In the year 1871, in pursuance of an act approved June 3, 1871, an election was held in said county for the location of the county seat and the election of county officers. At that election there were forty-two votes cast, of which Alma received thirty-seven votes.

The votes were canvassed, the result certified to the secretary of state, and the certificates filed in his office. The officers elected at this election did not qualify nor enter upon the duties of their offices, and no public notice was given or published of the location of the county seat.

16

On the 20th day of May, 1872, the then acting governor issued his proclamation appointing election officers and calling an election for the selection of the necessary county officers and the location of a county seat.

This election was held, county officers were elected, but no place received a majority of the votes cast for county seat, and two subsequent elections became necessary in order to settle that question. It is said that at the third election a majority of the votes were cast in favor of a point known as Melrose, but we cannot decide that question in this action, as it is not before us for that purpose, and especially so since the final vote was never canvassed by the county clerk as required by law. Certain legal proceedings were had, but as to the result of those proceedings we express no opinion, that question in our view not being before us.

Up to the year 1875 the county offices were held and the records kept at different places in the county as suited the convenience of the officers, and no place was recognized as the county seat. Since that date the offices and records have been kept and the courts have been held at Alma.

In June, 1877, proceedings by mandamus were instituted for the purpose of compelling the county commissioners to submit the question of the location of the county seat of said county the same as if no election had ever been held upon that question, and in October, 1881, without any decision or judgment having been rendered in said cause, the county commissioners voluntarily called said election.

The election was held. The apparent majority was in favor of Alma, whereupon the plaintiff entered his contest under the provisions of sec. 64 *et seq.* of the law of the state governing elections, his contest being in favor of Orleans, one of the places voted for at said election. The county commissioners were made defendants.

The defendants Shaffer and Willets appeared and applied to the court for leave to interplead as defendants,

which was granted, and they answered setting up the facts of the former elections, and alleged that the acts of the county commissioners in calling the election of 1881 were void, for the reason that they had no jurisdiction or authority to call an election for the purpose of locating the county seat. The cause was tried to the court, who found the following facts and conclusions of law:

"1st. The court finds in pursuance of an act of the legislature of the state of Nebraska, passed and approved June 3, 1871, an election for county officers, and the location of a county seat for Harlan County was duly called by the commissioners appointed by said act, and held in said county on the 3d day of July, 1871, at which election county officers were elected, and section 33, town 2, range 18 w. of the 6th P.M., on which the town of Alma is situated, received a majority of the votes cast for county seat. That the votes so cast were canvassed and certified to by the judges and clerks of election, and a return thereof made to said commissioners, who certified to said returns and transmitted the same, together with the proceedings had in respect to such election, to the secretary of state, which were by him filed in his office July 10th, 1871; that the officers elected at such election did not qualify and enter upon the discharge of their respective duties, and that no public notice was given or published of the location of the county seat at such place in thirty days after such election, or at any other time.

"2d. The court further finds that subsequently, and on the 29th day of June, 1872, in pursuance of a proclamation of the governor of the state, another election was called and held in said county for the election of county officers and the location of a county seat, as if the county seat of said county had never been located, at which election county officers were elected, who qualified and entered upon the discharge of their respective duties, but no place received a majority of the votes cast for county seat, and

thereupon two other elections were held for the location of a county seat by order of the county commissioners of said county, in pursuance of the statutes in such case made and provided, the first August 8th, and the last August 27th, 1872, at the last of which elections the only places voted for for county seat were Republican City and the south-west quarter of section 16, town 2, range 19 west 6 P.M.; and the last named place received a majority of the votes cast for the county seat of said county; that the votes cast at said last election were canvassed by the judges of election, and returns made thereof to the county clerk of said county, who neglected and refused to canvass them or cause the same to be canvassed in the manner provided by law.

"3d. The court further finds that in the mandamus suit in the district court of Harlan county, of *John McPherson v. Martin Fitch et al.*, mentioned in the pleadings herein, the defendants made return or answer setting forth that said south-west quarter of section 16, town 2, range 19 west, was the county seat of said county by virtue of the election of August 27th, 1872, and that while said suit was pending one Martin R. Miller, on his own behalf and on behalf of other residents and tax-payers of said county, was by order of said court allowed to interplead and answer, and said Miller did file an answer, therein setting forth that said town of Alma was the county seat of said county, by virtue of the election of July 3, 1871, as alleged in the answer of Shaffer and Willets herein. And the court further finds that the only pleadings in said case was the petition of the plaintiff or relator, McPherson, the return or answer of the original defendants, and the interpleader or answer of said Miller, and that the issue in said case was whether the county seat of said county, by virtue of the election of August 27th, 1872, was located at Republican City, or at said south-west quarter of section 16, town 2, range 19 west, or by virtue of the election of July 3, 1871,

at said town of Alma; and that proofs in said case were taken and introduced on the part of the defendants, including said Miller, but none on the part of said McPherson, and that said proofs were submitted to and considered by the court. And the court further finds that the district court in said case found there was no ground for a peremptory writ of mandamus, and considered and adjudged that the cause be dismissed, that the defendants recover their costs of the plaintiff, and that said court, by its findings and judgment in said case, did not find and determine whether said town of Alma, or said south-west quarter of section 16, town 2, range 19 west, was the county seat of said county. That said district court did not find and determine the location of the county seat in favor of the town of Alma.

"4th. The court further finds that after the election of county officers, in 1872, the officers so elected did not hold their offices, nor were the records of said county kept, nor was the business of said county transacted at any one place, but at various and different places in said county. That in 1875 the county commissioners of said county provided, and ever since have provided, a building and offices for the county officers and the transaction of county business and the holding of district courts at said town of Alma, and that, during the year 1875 and continuously ever since, the officers of said county have held their offices, the records of the county have been kept, the business of the county has been transacted, and the district court held at said town of Alma.

"5th. And the court further finds that the county commissioners of said county ordered the election of November 8, 1881, for the location of county seat of said county, as if the county seat of said county had never been located, and without any petition therefor having been presented to them.

"6th. And the court further finds that there were

irregularities in conducting the election of November 8, 1881, in Alma precinct in said county, and that fraud and malconduct were practiced at said election in said precinct by the officers who had charge thereof, and by others who were interested therein, by reason whereof the poll and vote of said precinct should be thrown out and rejected, and by throwing out and rejecting the poll and vote of said precinct the town of Orleans, in said county, received a majority of the votes cast in said county at the election of November 8, 1881, for the county seat of said county.

"FINDINGS OF LAW.

"1. The court finds as a matter of law that by virtue of the election of July 3, 1871, the county seat of said Harlan county was duly and legally located at said town of Alma, and that said town of Alma has ever since remained and still is the county seat of said county.

"2. And the court further finds as a matter of law that the election held in said county on November 8, 1881, for the location of a county seat for said county, was without authority, illegal, and void."

It may be claimed that in this proceeding—it being a contest of election under the specific provision of the statute—the issues formed were to a great extent outside of what the law intends shall enter into a contest of an election, and that the finding of the court as well as its conclusions of law are not within the legitimate question entering into such contest.

This we think is to a certain extent true. But yet, if for any reason the proceedings of the commissioners and the election were *void*, then there was in law nothing to contest, and it was clearly competent for this question to be presented to the court, and if it so appeared upon the facts it was proper for the court so to declare it and dismiss the whole proceeding. The judgment of the court

was that the election of 1881 be annulled, that plaintiff take nothing by his writ, and that this action be dismissed.

Section 94 of the election law above cited provides that, "The judgment of the court in cases of contested election shall confirm or annul the election according to the right of the matter; or, in case the contest is in relation to the election of some person to an office, shall declare as elected the person who shall appear to be duly elected.

Section 97 provides that, "When the person whose election is contested is found to have received the highest number of legal votes, but the election is declared null by reason of legal disqualification on his part, or for other causes, the person receiving the next highest number of votes shall not be declared elected, but the election shall be declared void." Compiled Statutes, chap. 26.

If the election was void it was the duty of the court under the provisions of this section to so declare it.

Entertaining this view, we think the first question to be considered by us is, had the commissioners any authority to call the election of November 8, 1881? If they had no jurisdiction over the subject matter their action must be held void, and the subsequent election under their call could not make it valid. Without quoting the provisions of the statutes upon this subject at length, it is sufficient to say that the act to provide for the organization of new counties and to locate county seats provides for an election upon this question without petition or other formality, and if at such election no place receives a majority of all the votes polled, succeeding elections shall be held until a choice is made by a majority of the votes cast at such elections. Provision is also made for the commissioners of any county wherein the county seat has never yet been located, to submit to the qualified voters of the county, at a general election, the question of the location of a county seat as if no election had ever been held in such county. See Article 2, entitled "Organization of New Counties,"

page 171, *et seq.*, Compiled Statutes. The commissioners doubtless acted under the supposed authority of section six of this article. Their power to act must depend upon the conditions in existence at the time of the submission by them of the question to the voters, a very essential element of which is that the county seat "has never yet been located as provided by law." It is conceded that two separate elections upon this question had previously been held in Harlan county under the forms of law, and at both of said elections a decision was made by the voters. One of those elections evidently settled the question. If the first, then the second election was void. If not at the first then at the second. As already observed in this opinion, these questions are not now before us, and we express no opinion thereon. It is also evident that the inhabitants of the county considered such to be the case from the fact that previous to the election of 1881 the county offices were all held at one place, the sessions of the district courts being also held there, and in so far as the *location* of such offices and courts there appears to have been no serious question.

If we are correct in these conclusions, it must follow that the only method by which the county commissioners could acquire jurisdiction to submit this question is by the receipt of the petition referred to in section 1 of article 3 of the act above referred to, entitled, "Relocation of county seats." And under that law the county commissioners would have jurisdiction to act, but not otherwise.

From the foregoing it follows that the judgment of the district court in annulling the election is correct, and is therefore affirmed.

JUDGMENT AFFIRMED.

MAXWELL, J., concurred.

COBB, CH. J., dissented.