[No. 1153. Decided March 27, 1894.]

JOHN RICKEY *et al.*, *Respondents*, v. A. T. WILLIAMS *et al.*, *Appellants.*

REMOVAL OF COUNTY SEAT—JURISDICTION OF COUNTY COMMIS-
SIONERS—INJUNCTION.

The fact that the commissioners of a county have made an order, based upon a proper petition therefor, for the submission to the people of the question of removing the county seat to the town named in such petition, will not authorize them, under Gen. Stat., §§ 2458-61, to submit at the same election a proposition for its removal to a certain other town, when the petition for removal to the latter place contains the names of less than one-third of the number of people voting at the last preceding general election.

Injunction will lie at the suit of a county officer to enjoin the removal of the county seat, when the board of county commissioners

had never obtained jurisdiction by proper petition to order the submission of the question to popular vote. (DUNBAR, C. J., dissents).

*Appeal from Superior Court, Stevens County.*

*R. B. Blake*, and *F. T. Post*, for appellants.

*Thomas C. Griffitts*, for respondents.

The opinion of the court was delivered by

SCOTT, J.— On August 20, 1892, a petition was presented to the board of commissioners of Stevens county, purporting to be signed by four hundred and twelve of the electors of said county, praying for a change of the county seat from Colville to Chewelah, and asking that at the next general election the question be submitted to a vote of the people. Whereupon said board of commissioners, on said date, made an order reciting that:

"It appearing to this board that said petition is signed by names to the number of at least one-third of the total number of votes cast at the last general election held in Stevens county, it is ordered that said petition be granted, and that said proposition be submitted to the voters of said Stevens county at the next general election."

On October 6, 1892, another petition was presented, purporting to be signed by one hundred and twenty-four of the electors of said county, asking for a removal of said county seat to Kettle Falls. Whereupon, on said date, the board made the following order:

"The petition of Arthur W. Holly and one hundred and twenty-three others for an election for the removal of the county seat from Colville to Kettle Falls read, and on motion of C. K. Simpson the prayer of the petitioners granted, and auditor ordered to have notices printed and posted."

It appears that two of the then commissioners were in favor of this motion and one was opposed to it.

On October 7, 1892, another petition was presented pur-

porting to be signed by fifty-one of the electors of said county, praying for a removal of the county seat to Springdale. Whereupon the board on said date made the following order:

"Petition of Mark P. Shaffer and fifty others for an election for change of county seat of Stevens county from its present location at Colville to Springdale, Stevens county, granted."

It appears that a vote was taken upon these propositions at the general election held on November 8, 1892, and that 599 votes were cast in favor of Kettle Falls; and that thereafter, on November 15, 1892, said board of county commissioners declared that said town of Kettle Falls had received the requisite number of votes to constitute it the choice of the electors of said Stevens county as its county seat, and ordered that notices of the result be posted as required by law.

The respondents brought this suit to enjoin the removal of said county seat from Colville to said town of Kettle Falls. They allege that they are taxpayers of said county; that respondent Rickey is county treasurer, and that appellants Williams, Weston and Simpson constituted the board of commissioners, and that the other appellants are the county officers of said county. After the induction of the newly elected county officers into office, in January, 1893, respondents filed an amended complaint, and sought to make the new officers parties defendant to the action. The court allowed the filing of the amended complaint, but denied the motion to make new parties. The complaint further sets up the filing of the petitions aforesaid, the election thereon, the decision of the commissioners, and that they were threatening to remove the county seat pursuant to such decision; and further alleged that the petition praying for a removal of the county seat to Kettle Falls was not signed by one-third of the qualified electors of said

31—8 WASH.

county, and that the board did not pass upon the sufficiency of the Kettle Falls petition.    The complaint also contains further allegations to the effect that great expense would be entailed upon said county in case such removal was made. These allegations were denied by the answer, and a trial was had and judgment rendered in favor of the plaintiffs, enjoining the removal of the county seat from the town of Colville, and from said judgment this appeal is prosecuted.

We find it unnecessary to discuss many of the questions raised by counsel, respectively.    The respondents contend that said election was void, and that the board of commissioners had no jurisdiction to submit the question of the removal of such county seat from Colville to Kettle Falls in consequence of the fact that the petition therefor had not been signed by the requisite number of qualified electors of said county.    Appellants dispute this, but first contend that the lower court had no jurisdiction over the subject matter of the action; that the matter of establishing and removing county seats is not a judicial function, but is purely legislative in character.

We will first discuss the proposition as to the validity of the election.   It was admitted upon the trial that at the general election held on November 4, 1890, which was the last preceding general election to the one in question, there were cast in Stevens county 1,033 votes.   Consequently, it appears beyond controversy that there was not the requisite number of signers upon the face of the petition asking for a removal of the county seat from Colville to Kettle Falls. But appellants contend that, under the law relating to the removal of county seats, the petition first presented, which was signed by the required number of electors, was sufficient to give the board jurisdiction to submit the matter of moving such county seat to Kettle Falls as well as to Chewelah.    The statutes in question are §§ 2458–2461, Gen. Stat., which are as follows:

"Sec. 2458. Whenever the inhabitants of any county of this state desire to remove the county seat of the county from the place where it is fixed by law or otherwise, they shall present a petition to the board of county commissioners of their county praying such removal, and that an election be held to determine to what place such removal must be made: *Provided*, That the petition for removal shall set forth the names of the towns or cities to which such county seat is proposed to be removed.

"Sec. 2459. If the petition is signed by qualified electors of the county equal in number to at least one-third of all the votes cast in the county at the last preceding general election, the board must, at the next general election of county officers, submit the question of removal to the electors of the county.

"Sec. 2460. Notice of such election, clearly stating the object, shall be given, and the election must be held and conducted, and the returns made, in all respects, in the manner prescribed by law in regard to elections for county officers.

"Sec. 2461. In voting on the question, each elector must vote for or against the place named in the petition, plainly designating same on his ballot."

And it is argued that as § 2458 provides that the petition for removal shall set forth the names of the towns or cities to which such county seat is proposed to be removed, the intention was not to limit it to any one place. Said first petition, however, only prayed for the submission of the question of the removal of the county seat from Colville to Chewelah, and we are of the opinion that the contention of the appellants in this respect cannot be sustained, although the language of the particular statute would seem to warrant it. It would have more force undoubtedly if the petition had asked for the removal of such county seat from Colville to one or more places, either designating them, or for a removal generally, according to the choice of the people in the election to be had.

It will be noticed, however, that § 2461 provides that in

voting on the question each elector must vote for or against the place named in the petition, and this first petition only having prayed for a submission of the one question, that is, for a removal of the county seat from Colville to Chewelah, that was the only question that the board was authorized to submit at the ensuing election; and the voting thereon under the statute in question had to be confined to the place named. It follows from the admitted facts in this case that the board had no jurisdiction to submit the question of the removal of such county seat to any other place than the town of Chewelah.

It is contended by appellants, however, that the board found that the petition asking for the submission of the question of the removal from Colville to Kettle Falls had been sufficiently signed. It is not contended that the board directly found this, but it is claimed that it must be held that they did find it in consequence of their having submitted the question; and that as the board passed upon this question, its determination thereof was conclusive and cannot be questioned in a judicial proceeding. It is claimed that the action of the board in the premises was in effect but one action upon all three petitions, and that the question should be considered as if all three petitions had prayed for a removal of the county seat to the respective places named. But this contention is not sustained. The board acted upon the first petition before the others were presented, and their action upon the subsequent petitions was an entirely independent matter, and was so necessarily.

*Board v. Markle*, 46 Ind. 96, is cited as sustaining the proposition that the finding of the commissioners upon the sufficiency of the petition cannot be called in question. That case is the most nearly in point of the cases cited by appellant; but it is not strictly applicable, for it only appeared in that case that the petition had been signed by two persons and others, the number not being stated;

while in this case it affirmatively appears from the admitted and uncontroverted facts that the petition asking for a removal to Kettle Falls was not signed by the requisite number of electors.

There are certain questions, probably, upon which the finding of the commissioners would be held conclusive, as, for instance, in determining the qualifications of the signers, as to whether they were qualified electors of the county. But no such question is presented here, nor are we called upon to review the action of the board as to any question upon which they could have found under the admitted facts in the premises; nor to determine whether the action of the board in such matters is judicial in its nature or otherwise.

In either event, the action of the board in submitting the question of the removal of the county seat from Colville to Kettle Falls was absolutely unauthorized, and the election held in pursuance thereof was necessarily invalid for that reason, and the question is presented as to whether, under such a state of facts, an injunction will lie to prevent a threatened removal of the county seat in pursuance of such void election.

It is contended first by appellants that such an action will not lie at the suit of a taxpayer, as the question of the removal of a county seat is a political question, in which no person has any property right, and many authorities are presented in relation thereto. A number of states have held that a suit to enjoin the removal of a county seat will not lie at the instance of a taxpayer. In *Attorney General v. Supervisors*, 33 Mich. 289, it is held that the removal of a county seat is a purely political question, and does not in any way legally involve the rights of private parties. There was no question of increased expenses or the expenditure of public moneys involved in

that case.    Other cases have been cited to the same effect, but we deem it unnecessary to discuss them.

Considered in the abstract, it must be admitted that such question is a political question, but when it appears that such changed location involves the expenditure of a large sum of public money, which would otherwise be unnecessary, no good reason is apparent why the removal thereof may not be enjoined in case the election was void.    Numerous instances have been presented where the right of a taxpayer to enjoin the illegal expenditure of public moneys and the unlawful levying of a tax has been sustained, and there is no good reason why such a suit will not lie in all such cases, regardless of the use to which the money is to be devoted, and although the validity of an election to determine the relocation of a county seat is involved.    The result to the taxpayer is practically the same in all cases.

An entirely different case is presented here from that of *Parmeter v. Bourne, ante,* p. 45, lately decided by this court.    There was no question in that case of the jurisdiction of the board to call the election; but the questions raised related to matters upon which the board of commissioners or the election boards had passed, or had presumptively passed, after having obtained jurisdiction in the premises.

We find it unnecessary, however, to determine in this case as to whether such an action will lie at the instance of a taxpayer only, for the plaintiff Rickey was county treasurer, and the law compelled him to hold his office at the county seat.    We are of the opinion that in any event he was a proper party plaintiff, and no question of misjoinder has been raised in the case.    Rickey had a special interest in the matter, and the complaint states a cause of action. The defendants were about to compel him to remove his office as treasurer to another place than the county seat,

and it was not only his right but his duty to prevent such action.

Of the authorities presented by the respective parties we cite the following as sustaining the conclusions we have reached: *Caruthers v. Harnett,* 67 Tex. 127 (2 S. W. 523); *Fox v. Board of Supervisors,* 49 Cal. 563; *Laws v. Vincent,* 16 Neb. 208 (20 N. W. 213); *Boren v. Smith,* 47 Ill. 482; *Hays v. Jones,* 27 Ohio St. 218; *State v. Eggleston,* 34 Kan. 714 (10 Pac. 3); *Hord v. Elliott,* 33 Ind. 220; *Doan v. Board of Commissioners,* 2 Idaho, 781 (26 Pac. 167); *Todd v. Rustad,* 43 Minn. 500 (46 N. W. 73); *Lane v. Schomp,* 20 N. J. Eq. 82; *State v. Nemaha Co.,* 10 Neb. 32 (4 N. W. 373); *Ayres v. Moan,* 34 Neb. 210 (51 N. W. 830); *La Londe v. Board of Supervisors,* 80 Wis. 380 (49 N. W. 960).

The granting of the writ in this case did not involve an inquiry into any matter which rested in the discretion of the board, nor into any disputed question of fact. It was not an interference with the legislative branch of the government in any sense, but rather was in aid of legislative action. The legislature only authorized the board to submit the question in case the petition specified was filed, and then the board *must* submit it. If the board should arbitrarily refuse to act where under the undisputed facts the law required them to proceed, the courts would unquestionably compel them to act. No other branch of the government could compel action, and if the courts have not jurisdiction in such a case the legislature is powerless and the law simply a dead letter.

Affirmed.

HOYT, STILES and ANDERS, JJ., concur.

DUNBAR, C. J. (*dissenting*).— I dissent. I think this case falls within the logic of the opinion rendered by this court in *Parmeter v. Bourne, ante,* p. 45. There is no question

involved in this case of the power of the courts to compel the board to act, for the board *did* act, and the question is, can the court review that action? When the board has exercised its discretion, its judgment, in my opinion, is conclusive.