# REPORTS OF CASES

### DETERMINED IN

# THE SUPREME COURT

### OF THE

# STATE OF NEVADA

### JANUARY TERM, 1910

[No. 1846]

THE STATE OF NEVADA, EX REL. J. G. KAUFMAN, M. E. LEAVITT, AND E. R. LAM, RELATORS, v. C. T. MARTIN, BYRON GATES AND I. A. STROSNIDER, CONSTITUTING THE BOARD OF COUNTY COMMISSIONERS OF LYON COUNTY, NEVADA, RESPONDENTS.

1. COUNTIES—CHANGE OF COUNTY-SEAT—PETITION—STATUTES.
   Comp. Laws, 5007, requiring an election for the removal of the county-seat when three-fifths of the qualified electors of the county, each elector being a taxpayer thereof as appears by the last assessment roll, who have taken the oath for registration of electors, shall petition the county commissioners thereof, and section 5010, providing that every petition shall be accompanied by the certificate of the registry agent where the petitioners reside, showing that they are qualified electors, as appears by the registry list, or by affidavits filed in his office of persons not registered at the last general or special election, but who are qualified electors, require a petitioner to be a taxpayer whose name appears upon the last assessment roll and requires him to be a qualified elector, and the fact that one may have failed to register for a special election does not disqualify him where' he possesses the substantial qualifications and is a taxpayer and voter as indicated.

2. COUNTIES—CHANGE OF COUNTY-SEAT—PETITION—STATUTES—"TAXPAYER."
   Persons who appear on the assessment roll as paying taxes only in a partnership capacity are taxpayers within Comp. Laws, 5007, providing for the removal of a county-seat on three-fifths of the qualified electors of the county, each elector being a taxpayer thereof, petitioning therefor.

## ON REHEARING

1. STATUTES—CONSTRUCTION.

Where different meanings may reasonably be given to a statute, the one should be applied which will make it effective and not nullify it.

2. COUNTIES—COUNTY-SEATS—ELECTIONS—PETITION.

Under Comp. Laws, 5007, providing that, when three-fifths of the qualified electors of a county petition for the removal of the location of the county-seat, the county commissioners shall order an election, and the place receiving the majority of votes cast shall be declared the county-seat, and, if no place receives a majority, a second election shall be held, etc., a petition for the removal of the county-seat which alleges every statutory requirement is not void because it also asks that an election be called to determine whether the county-seat shall be removed to a particular place, and the county commissioners may ignore the reference to the particular place and proceed to call an election without designating any place for which the votes are to be cast.

ORIGINAL PROCEEDING. *Mandamus* by the State, on the relation of J. G. Kaufman and others, against C. T. Martin and others, constituting the Board of County Commissioners of Lyon County. **Application denied.**

*Huskey & Springer*, for Relators:

I.   In the present case we might say "the proposition, therefore, must go to this extent: That the county commissioners are clothed with absolute and despotic authority over the rights of the petitioners. If the determination of the county commissioners be not final, then the writ must issue; for under the law the failure to act on the petition brings the proceeding to a complete stop, and there is no other remedy in law or equity."

The case of *People* v. *Alameda County*, 45 Cal. 395, involves the construction of the California law on the subject of removal of county-seats. That law, like our statute of March 2, 1867, on the subject, provides no criterion for determining the sufficiency of the petition for an election, but leaves it to the discretion of the board of supervisors. That case, like the present one, was an application for a writ of *mandamus*, to compel the board to call the election. The answer alleged that the board was not satisfied from the proof offered that the petition was sufficient. The court considered this no

defense and ordered a reference to a district court to try and determine the question of the sufficiency of the petition.

In *Stockton Railroad Co.* v. *Stockton*, 51 Cal. 328, a writ of *mandamus* was granted to compel the City of Stockton to deliver certain bonds.

This case also proceeds on the theory that by nonuser of his discretionary powers of investigation the discretion of the governor in the premises ceased and the duty became ministerial, the petition being in fact sufficient. In all of these cases the distinction between the discretion to determine preliminary facts and discretion in doing the act ordered by statute when the preliminary facts have been determined in favor of doing the act is continually kept in sight.

In *Good* v. *Common Council*, 90 Pac. 45, an application was made for *mandamus* to compel the calling of an election. In this case, also, the statute provided that the election was to be called upon the presentation of a petition. The common council voted "to disregard said petition and to table and file the same without action." Evidently the California court did not consider the respondents' power "exhausted" by this act, in conformity with the theory advanced by respondents in the present case, for it granted the writ and ordered the election to be called. In this case also the election was ordered called after the time fixed by statute therefor had expired.

We ask, why, if a board of county commissioners, upon a mistaken view of the law, refuses to do an act enjoined upon it by law, should it be treated differently from a district court under the same circumstances?

Whether the Eureka County commissioners case has been overruled or not, it has no application in the present case. Whatever discretion as to the determination of preliminary fact was vested in the commissioners by the statute construed in the Eureka County commissioners case, certainly there can be no question that no discretion whatever is conferred upon respondents by the statute of March 2, 1877.

In *Esmeralda County* v. *District Court*, 18 Nev. 438, this court decided the specific proposition that the determination of a fact by reference to the assessment roll is a ministerial and not a judicial act.

Where an officer or board is under a clear ministerial duty to give notice of and order an election, *mandamus* lies to compel the performance of that duty. (*Rizer* v. *People*, 18 Colo. App. 40, 69 Pac. 315; *McConihe* v. *State*, 17 Fla. 238; *People* v. *Fairbury*, 51 Ill. 149; *Glencoe* v. *People*, 78 Ill. 382; *State* v. *New Orleans*, 52 La. Ann. 1604, 28 So. 116; *State* v. *St. Louis School Board*, 131 Mo. 505, 33 S.W. 3; *Morris* v. *Wrightson*, 56 N. J. L. 126; *People* v. *Brooklyn*, 77 N. Y. 503; *State* v. *Young*, 6 S. D. 406, 61 N. W. 165; *Kimberly* v. *Morris*, 87 Tex. 637, 31 S. W. 808; *Jenney* v. *Alden*, 64 Atl. 609; *State* v. *Hinckle*, 111 N. W. 217; *State* v. *Crabtree*, 35 Neb. 106, 52 N. W. 842.)

But if such board wrongfully fails, neglects or refuses to cause the election to be held within the statutory period, while the board has no further power, within itself, to cause the election to be held thereafter, the supreme court may, at the instance of the petitioners whose prayer for an election has been refused, compel such election to be held after the expiration of the statutory period. (*State* v. *Patterson*, 207 Mo. 129; *Good* v. *Common Council*, 90 Pac. 45; *Mann* v. *Mercer County Court*, 52 S. E. 776; *McConihe* v. *Florida*, 17 Fla. 238; *State* v. *Young*, 6 S. D. 406; *People* v. *Common Council of Brooklyn*, 77 N. Y. 503, 33 Am. Rep. 659; *People* v. *Town of Fairbury*, 51 Ill. 150; *State* v. *Board of Commissioners*, 39 Kan. 293; *Coleman* v. *People*, 7 Colo. App. 243.)

II.   The statute requires only three-fifths of the taxpaying electors of the county, as shown by the assessment rolls, to sign the petition, not three-fifths of all of the electors.

The words "Whenever three-fifths of the qualified electors of any county, each elector being a taxpayer,   *   *   *   shall petition," etc. (Comp. Laws, 5007), are not ambiguous.   They are susceptible to but one meaning, and that is: "Whenever three-fifths of the taxpaying electors shall petition."

The construction or composition is crude and cumbersome; but a little thought and the application of the ordinary rules of grammatical analysis will show that the meaning is unequivocal. "Whenever three-fifths of the qualified electors of any county"—what specific qualified electors of the county are referred to?   The succeeding clause, inserted between commas, answers this question: "each elector being a tax-

payer." That is, each of the qualified electors referred to, from which the three-fifths are to be selected, must belong to the taxpaying class. The meaning would have been the same had the following construction been used: "Whenever three-fifths of the qualified electors of any county (such qualified electors being taxpayers) shall petition," etc. The words "each elector being a taxpayer" are inserted, not as a limitation on "three-fifths," but as a limitation on the words "qualified electors." They serve merely to further limit and designate the class of electors meant and the class from which the three-fifths are to be chosen, viz: the electors who are "qualified" and who are also "taxpayers."

III.    A statute is to be construed so as to carry out the intent of the legislature, though such construction may seem contrary to the letter of the statute.    (Sutherland on Statutory Construction, 2d ed. secs. 517, 363, 364; *Howes* v. *Abbot*, 20 Pac. 572; *Burton* v. *Todd*, 9 Pac. 663; *Smith* v. *Randall*, 65 Am. Dec. 475; *Calaveras Co.* v. *Brockway*, 30 Cal, 325; *Knowles* v. *Yates*, 31 Cal. 82; *Kinsey* v. *Kellogg*, 3 Pac. 405; *Stockton School Dist.* v. *Wright*, 66 Pac. 34; *Thompson* v. *State*, 20 Ala. 54; *Inhabitants of Gray* v. *Cumberland Co. Comrs.*, 22 Atl. 376; *People* v. *Lacombe*, 1 N. E. 599; *Territory* v. *Clark*, 35 Pac. 882; *Baring* v. *Erdman*, Fed. Cases No. 981; *City of Evansville* v. *Summers*, 9 N. E. 81.)

IV.    We invite the attention of the court to the general rule of statutory construction that "where a question of construction is before the court, words and phrases may be transposed and grammatical sense does not always control."    (Idem, sec. 367.)

*C. H. Miller* and *Mack & Green*, for Respondents:

I.    It has repeatedly and uniformly been held by this court that *mandamus* does not lie to review or control the exercise of judicial functions.    (*State, ex rel. Office Specialty Co.*, v. *Curler*, 26 Nev. 347; *State* v. *Commissioners*, 8 Nev. 309; *Hardin* v. *Guthrie*, 26 Nev. 246; *State* v. *Wright*, 4 Nev. 119; *Hoole* v. *Kinkead*, 16 Nev. 217; *State* v. *Murphy*, 18 Nev. 89; *State* v. *Green Co. Commissioners*, 119 Ind. 444.)    An examination of the authorities cited by relators will disclose that in all of the

cases cited the board, officers or inferior tribunal either *refused* to act at all, or acted upon an erroneous construction of the law, against the consequences of which error the petitioner has no plain, speedy and adequate remedy. In this case none of these prerequisites are present, and the writ of *mandamus* would not be an appropriate remedy, even in the states where the cases cited by relators were decided.

II. Assuming for the sake of argument that the relators' construction of the statute is correct, and the construction applied by the board is incorrect, equity would grant ample relief, whether the decision of the board resulted from fraud or mistake. · An erroneous construction of the law, entirely independent of any motives that may have prompted it, would constitute constructive fraud, or fraud in law, against the consequence of which equity will relieve.

"To entitle a relator to a writ of *mandamus*, his right must be a clear *legal* one. *Mandamus* will never issue to enforce an equitable right." (13 Ency. Pl. & Pr. 496; and cases cited; 26 Cyc. 151.)

III. The writ of *mandamus* was never designed to displace or supersede other legal or equitable remedies. In an application for a writ of *mandamus* the relator must show a clear *legal* right to the relief demanded. (*State* v. *Noyes*, 25 Nev. 32; *State* v. *Stoddard*, 25 Nev. 452; *Pyne* v. *LaGrave*, 22 Nev. 417; *State* v. *Boerlin*, 98 Pac. 402.)

The petition presented to the board was not sufficient to invoke the authority of the board to call a special election. The petition prayed for a special election to move the county-seat of Lyon County from the Town of Dayton to the City of Yerington. Under the law, no election could be held for such purpose, and the board was perfectly right in denying the petition. The law authorizes the filing of a petition to move the county-seat merely—not to move it to a particular place, for that is a question to be determined by the voters; and was it not right for the board of county commissioners to deny the petition under these circumstances, regardless of whether it contained the requisite number of names or not? For there can be no presumption indulged by the board of county commissioners that the signers of the petition could

have been induced to sign the petition under any other condition than that the election would be held for the purpose of moving the county-seat from the Town of Dayton to the City of Yerington. Relators affirm that the prayer for a removal to the City of Yerington is but a surplusage; and could it be said that it would have been fair for the board of county commissioners of Lyon County to call a special election on the petition of qualified electors and taxpayers of said county who had been induced to sign it under the guise that the City of Yerington would become the county-seat and under no other consideration? Obviously, the relators have petitioned for one thing and are asking this court to *mandamus* the board to do another and different thing than that sought to be accomplished by the signers of the petition, which alone gives the board jurisdiction to act.

IV. It has been repeatedly held by this court that *mandamus* would issue to compel an inferior officer, board or tribunal to act, but never would be issued to direct them how to act or to compel them to act in any particular way. (*Hardin* v. *Guthrie*, 26 Nev. 225; *State* v. *Wright*, 4 Nev. 123; *Hoole* v. *Kinkead*, 16 Nev. 222; *State* v. *Boerlin*, 98 Pac. 402.) How then may this court direct the board to act, and how may it act without such direction? In other words, what date would or could this court fix for such election? And how could the board, not being directed to call an election, fix a date for the holding of such election? And what law enjoins upon them a duty to notice an election for a particular date, the time provided by law for the holding of such election having expired? Where the language is plain, clear and unambiguous, there is no room for construction or interpretation. (*Brown* v. *Davis*, 1 Nev. 409; *Wall* v. *Blaisdell*, 4 Nev. 241; *Fitch* v. *Elko Co.*, 8 Nev. 271; *Hess* v. *Commissioners*, 6 Nev. 104; *V. & T. R. R. Co.* v. *Lyon County*, 6 Nev. 68; *Lewis* v. *Doron*, 5 Nev. 400; *Odd Fellows Bank* v. *Quillen*, 11 Nev. 109; Sutherland, sec. 408.)

PER CURIAM:

The question presented is whether the petition presented to the board of county commissioners of Lyon County is signed by a sufficient number of qualified taxpaying electors to

require the calling of an election to determine whether the
county-seat shall be moved.

Section 5007 of the Compiled Laws provides: "SECTION 1.
Whenever three-fifths of the qualified electors of any county
of this state, each elector being a taxpayer of said county, as
appears by the last assessment roll, who have taken and sub-
scribed to the oath or affirmation prescribed by law for the
registration of electors in this state, shall petition the board
of county commissioners of such county for the removal or
location of the seat of justice of said county, the said county
commissioners shall, within sixty days thereafter, cause an
election to be held.  *  *  *  The place receiving a majority
of all the votes cast at such election shall be declared the
county-seat."

And section 5010 provides: "SEC. 4. Every petition for the
purpose mentioned in section one of this act shall be accom-
panied by the certificate of the registry agent of the district
where the persons signing such petition reside, showing that
all the persons whose names are signed to said petition are
qualified electors of said county, as appears by the registry
list of said district, or the affidavits on file in his office of
persons not registered at the last general or special election,
but who are qualified electors of said county."

It is admitted that the signers of the petition who were on
the last assessment roll numbered less than three-fifths of the
taxpaying electors whose names appear on both the registry
list of the last general election, held in 1908, and on the
registry list of the last special election, held in February, 1909;
but the number of these petitioners is more than three-fifths
of the taxpaying electors registered at the special election, and
on behalf of the relators it is contended that this is sufficient,
that the lists at the special election being the latest and only
ones for the election of 1907 are the lists for that year, and
control and supersede the lists of the general election held in
the previous fall.  After a careful reading of the statute, we
are not inclined to adopt this view, and we think the language
quoted should be given a broader construction, as evidently
intended by the legislature.  It will be noticed that the lan-
guage in section 1 of the act that "whenever three-fifths of the

qualified electors, each elector being a taxpayer of said county, as appears by the last assessment roll, who have taken or subscribed to the oath or affirmation prescribed by law for the registration of electors in this state, shall petition," and section 4, do not make a limitation to the lists of a special election, nor does any other language in the statute. The construction for which relators contend would be equivalent to interpolating, after the words "last assessment roll," in section 1, or in section 4, "and as appears by the registry list of the last election, whether general or special." By a fair construction of the language in section 4, "as appears by the registry list of said district, or the affidavits on file in his office of persons not registered at the general or special election, but who are qualified electors," it was evidently intended to include the names appearing on the lists of both the general and special election and of persons making and filing the affidavit required for registration. The qualifications of a petitioner are that he be a taxpayer whose name appears on the last assessment roll, and that it be shown by the lists of the last general or special election or by affidavit that he is a qualified elector. We do not think the fact that he may have failed for any reason to register for a special election, as in effect claimed by relators, should disqualify him if he possesses the substantial qualifications and is a taxpayer and voter as indicated.

The question has been raised regarding the forty-two persons who appear on the roll as paying taxes only in a partnership capacity. Under the language and purpose of the statute their names should be included, for it provides for all taxpaying electors whose names appear on the last assessment roll, without any limitation as to whether they pay taxes individually or as partners. In either instance their names appear, and we see no good reason why one whose name appears as a member of a large merchandising, farming, stock-raising, or other business firm should not be considered and included as well as one who may be taxed only on a town lot valued at a trifling amount.

Extensive argument has been made regarding the right of twenty-one of the petitioners to withdraw their names and of thirteen of these to rescind their withdrawal and allow their

names to stand on the original petition, and a number of cases have been cited sustaining such right; but it is not necessary for us to consider at length or determine this question, for, regardless of any such right of withdrawal or rescission, the petition lacks the support of the necessary three-fifths of the taxpaying electors appearing on the last assessment roll.

Application for the writ is denied.

## ON REHEARING

*PER CURIAM:*

In an able and extended petition for rehearing, it is urged that the court is in effect giving a meaning to the statute contrary to the words it contains. We are unable to agree with this contention and still feel satisfied with our former construction of the section in question for the two reasons: That we believe that the construction we have given it is the most natural and grammatical one, and if this were not so, and different meanings could be reasonably given it, still that one should be applied which would make effective and not nullify the statute as held in the opinion.

We are asked to again consider one objection made regarding which we did not give particular attention in the opinion. According to the allegations, the petition presented by the taxpaying electors to the board of county commissioners asks that a special election be held to move the county-seat from the Town of Dayton to the City of Yerington. It is claimed that under the law no election could be held for that purpose, and that the board was right in denying the petition, for the statute in question did not authorize an election for any such purpose, but only an election to determine the question of removal of the county-seat. It is said that, if this petition invested them with any jurisdiction at all, it was for the purpose of calling an election to remove the county-seat to Yerington, and as the statute did not authorize the board to limit the determination of the question to any particular place in the county, and has left the matter with the people, the board was not invested with the authority to call an election for any purpose. It is said that relators have petitioned for one thing, and are asking this court to do another and different thing by *man-*

*damus* than that sought to be accomplished by the signers of the petition, and that it cannot be presumed by the board or by the court that the signers of the petition would have been induced to sign under any other condition than that the election would be held for the purpose of removing the county-seat to the City of Yerington.

Under this contention the question arises whether a petition which alleges everything required by statute, and which asks for the removal of the county-seat and is signed by the requisite number of voters, becomes vitiated because it goes further and asks that an election be called to determine whether the county-seat shall be removed to a particular place, when the statute does not provide that the place shall be mentioned, nor that it shall not be mentioned.

According to the allegations, the petition signed by the electors contained everything required, under section 5007 of the Compiled Laws, providing that when the necessary number of taxpaying electors "shall petition the board of county commissioners of such county for the removal or location of the seat of justice of said county, the said county commissioners * * * shall cause an election to be held. * * *" Was the fact that the petition asked for an election regarding removal and requested that an election be called to determine whether the county-seat should not only be removed, but whether it should be removed to the City of Yerington, fatal to the petition, when the later language in the section provides: "The place receiving a majority of all the votes cast at such election shall be declared the county-seat; *provided*, that if no place receive a majority of the votes cast, there shall be held a second election, * * *" at which "the balloting for the seat of justice shall be confined to the two places having the highest number of votes at the first election?" It appears from these provisions that after the petition is filed and election ordered, the law places the determination of whether the county-seat shall be removed and the place to where it shall be removed, if it is to be removed, with the majority of the votes cast at the election, provided that, if no place has a majority, a second election shall be held confined to the two places having the highest number of votes at the first election.

The selection of the place for the county-seat could be made only by the majority of the voters at the election.

As the law which every one is required to know controls, and as it is alleged that the petition is signed by the requisite number of taxpayers, asking for a special election to determine whether the county-seat shall be removed, and states all that is required by the statute, we think the fact that it goes further and asks that an election be held to determine whether the county-seat shall be removed to the City of Yerington, and contains in this regard a matter not required to be stated in, and which it would have been better to omit from, the petition, and which is governed by the law itself, does not make the petition void for the reason that the reference to the City of Yerington may be rejected as surplusage and of no effect as being in conflict with the section in question. The board could ignore the superfluous reference to the City of Yerington and act upon the other parts of the petition which, without this reference, stated everything required by the statute, and could have proceeded to call the election, without designating any place for which the votes were to be cast; but if, following the petition, the board had called an election to determine whether the county-seat should be removed, when the statute contemplates that the place shall not be mentioned, a majority of the electors by their votes would, nevertheless, have had the right to determine where the county-seat should be removed, and this control of the election for the county-seat, being finally placed with a majority of the voters by law, could not be lessened or affected by the unnecessary reference to the City of Yerington contained in the original petition which met the essential requirement of the act of the legislature, because the petition for an election of three-fifths of the voters who paid taxes would meet this requirement.

If the necessary number of taxpayers wanted to have the county-seat changed to the City of Yerington, there was certainly as much need for an election, and as great, if not more, probability that the election would result in a change, then if the requisite number of signers of the petition were divided as to the place of removal, so that different parts of

them wanted to have the county-seat removed to different places. It is natural to conclude that the electors who signed the petition seeking a removal to Yerington would sign one omitting the request as to the place, when the law would finally allow them to vote for Yerington; and for us to hold that the petition is void by reason of its reference to the City of Yerington might simply result in having the same signers join in a new petition omitting such reference. If it be conceded that the petition must allege everything required by the statute, we think that a further statement not required, asking that an election be called to determine whether the county-seat shall be removed to the City of Yerington, which would not affect the result nor injure any one concerned, does not necessarily vitiate the petition. If the board proceeded to call an election as directed by the statute, which speaks of its duties, omitting any reference to Yerington in the call, the voters would have the same privilege under the law of determining whether the county-seat should be removed to Yerington or some other place, as if the reference to which objection is made had been omitted from the petition.

If the petition had not made any reference to the City of Yerington, it could still be presumed that the signers, being taxpayers, desired to have the county-seat removed from Dayton to some other place or places in the county, or else they would not have asked for an election towards the expense of which they would have to contribute. So long as they desired and petitioned for an election to determine whether there should be a removal, and the petition contained everything required by the letter of the statute, the further statement that the petitioners desired to have an election to determine whether the county-seat should be removed to the City of Yerington was quite as fully within the purpose and spirit of the act as if there had been no reference to the place, with the inference still remaining that they desired a removal to some new place or places. The presumption being that they wished removal, the statement in the petition that they all desired a removal to the City of Yerington does not seem to us to be any good reason why the election should not be held, when there would be as much need for holding it as if there had been no

reference to the place in the petition, and the inference would prevail either that they all wanted removal to the City of Yerington, or, which would show even a less necessity for an election, that different signers desired a removal to different places.

The statutes regarding removal of county-seats are different from ours in many of the states, and we find only one case directly in point, and that is based on a Texas statute similar in principle to ours in so far as it relates to the question involved; but courts usually hold that the insertion of unnecessary matter, which may be contrary to law, which will not affect the interests of the litigants, or change the final result, will not render the petition, complaint, or other instrument void.

After reviewing a number of cases, in *Ex Parte Tani*, 29 Nev. 387, 13 L. R. A. (N. S.) 518, we held that the part of the judgment of a court fixing the state prison for serving a sentence should be rejected as surplusage when in conflict with the statute which fixes the county jail as the place of punishment for the particular offense, on the theory that what is fixed by law will prevail, regardless of the mistake of the court or the contrary statement in the judgment. (*In re Bonner*, 151 U. S. 258, 14 Sup. Ct. 323, 38 L. Ed. 149.)

In *Whitaker* v. *Dillard*, 81 Tex. 363, 16 S. W. 1086, the petition was for an election to determine whether the county-seat should be removed to the "geographical center of Bowie County." Although the statute, facts, and the conclusion of the court were analogous in principle to the present case, the objection to the petition was the opposite to the one made here, in that it was contended that the petition did not name any place to be voted for. The court held that the statute did not require any place to be named in the petition, which is true of our statute, but that the term, "geographical center of Bowie County" designated the place sufficiently when used by the voters, from which it follows that the petition there designated a place to which removal was asked when the statute did not require it, and the election based upon this petition was held to be legal. The court said: "The application for election ordered and held was one asking an election to determine whether the

county-seat should remain at Texarkana or be removed to the geographical center of Bowie County; and it is claimed that the order for the election and the election were invalid, 'because the petition to the county judge to order an election for removal of county-seat did not name any place to be voted for, the geographical center not being a place as contemplated by the laws authorizing the removal of county-seats'; and 'because there was no such place as the geographical center at the date of the election, the said center had no visible material, or physical existence at that time, and the voters did not and could not know for what place nor where they were voting to remove the county-seat.'

"We do not understand that the statute requires a petition for an election to remove a county-seat, nor an order directing an election for that purpose, to state to what point it is desired to remove a county-seat, nor that when an election for such purpose is ordered the people may not vote to place the county-seat at any place that may suit them, just as fully as they may select and vote for any person at a general election for county or state officers as they please. Neither the application for the order for an election nor the order of the county judge can restrict the right of the qualified voters to vote for as many places as they please. The order must fix the time when and places where the election must be held, but it can place no restriction on the right of any voter to vote for any place he may prefer. It does become important, however, that the votes shall so designate the place voted for that it may be identified, and thus the actual locality of the place selected for county-seat be determined. It is contended that the words 'geographical center' should be restricted so as to mean nothing more than the word 'point' when used in considering a geographical problem or proposition—something without length, breadth, or thickness, without magnitude or parts—from which it would follow that no place sufficient for the purposes of a county-seat was selected. But it is obvious that such a meaning was not attributed to the words when used with reference to the selection of a place for a county-seat, and that any person so voting must have intended and desired to be understood as voting to locate the county-seat at a place

where the court-house and other public offices and buildings required by law could be erected—at a place that would include the center of the county and have such area as was necessary for all purposes for which county-seats are used and required by law to be established and maintained. The constitution provides that a majority of electors 'may remove a county-seat from a point more than five miles from the geographical center of the county to a point within five miles of such center'; but no person would contend that the word 'point,' as here used, was used in any sense other than that usually attached to the word 'place.' "

The Arkansas statute regarding the removal of county-seats requires that one-third of the voters join in the petition and a designation and abstract of title, and terms and conditions of the sale or donation. In *Butler* v. *Mills*, 61 Ark. 477, 33 S. W. 633, the court said: "We are clearly of the opinion that if all the petitions asking for removal, taken together, amount to one-third of the voters of the county, the county court is authorized and required to order the election, and that it makes no difference how many different papers or petitions contain these names; the only requisite being that they all ask for removal, or enough of them to constitute the one-third, and this without regard as to how any of them may stand on the other proposition, namely, the place of location of the county-seat."

In *Benton* v. *Nason*, 26 Kan. 660, the court said: "Several questions are presented, and yet in none of them do we see anything prejudical to the rights of the plaintiff in error, or which justifies us in disturbing the decision of the lower court. The first question that arises is on the language of the petitions filed with the county commissioners. One petition was for permanently relocating the county-seat; the other was for permanently locating the county-seat. Neither petition by itself had sufficient names. Counsel insists that the statutes prescribe the form of the petition, which must be strictly followed. In this they are mistaken; the statute gives no form, but simply declares that, upon petition of a certain number of the legal electors, the commissioners shall order an election for the relocation of the county-seat. All that is

necessary is that the petition should distinctly express, in one form of language or another, the wish of the petitioners, and upon that expressed wish it is the duty of the commissioners to act."

In Washington the statute provides that the petition for removal shall be signed by the qualified electors of the county equal to the number of one-third of all the votes cast at the last preceding general election, and that, "in voting on the question, each elector must vote for or against the place named in the petition, plainly designating the same on his ballot." In *Rickey* v. *Williams*, 8 Wash. 479, 36 Pac. 480, it would seem that the court properly held that the fact that the county commissioners made an order based on a proper petition for the submission to the people of the question of the removal of the county-seat to the town named in the petition did not authorize them to submit at the same election a proposition for its removal to another town which did not contain the names of the necessary one-third of the voters.

The petition for rehearing on demurrer is denied.