## M. O. AYRES ET AL. V. J. M. MOAN ET AL.

[FILED MARCH 16, 1892.]

1. **County Seat**: REMOVAL: PETITION: SIGNERS. Under the provisions of section 1, art. 3, of chapter 17, Compiled Statutes, a petition for the removal of a county seat must be signed by "resident electors" of the county equal in number to three-fifths of all the votes cast in the county at the last general election. The words "resident electors" are used to distinguish actual residents of the county from such persons as are temporarily therein.

2. ———: ———: ———: ———: DESCRIPTION. In addition to the name of each petitioner the petition must show the section, township, and range on which, or the town or city in which, he resides, together with his age and time of residence in the county. The omission of any of these particulars will be sufficient to cause his rejection as a petitioner.

3. ———: ———: ———: DUTY OF COUNTY BOARD. In examining the names of the petitioners it is the duty of the board to carefully scrutinize the entire list and reject all that are fictitious, false, or repetitions, and to permit proof tending to show that some or all of those who have signed the petition or remonstrance were not in fact resident electors of the county.

4. ———: ———: SUPPLEMENTAL PETITION UNAUTHORIZED. The petition when presented must contain the names of all persons who desire to sign the same as petitioners. A supplemental petition is unauthorized.

5. ———: ———. ELECTIONS: BRIBERY. No form of bribery to secure votes will be sanctioned by the courts. This rule is equally as important in county seat elections as in other cases. The design of the law is to secure the free and voluntary expression of each voter of his choice for the county seat.

ERROR to the district court for Dakota county. Tried below before NORRIS, J.

*Reese & Gilkeson, Jay & Beck, J. T. Spencer,* and *R. E. Evans,* for plaintiffs in error:

It was the duty of the board to receive the proof offered.

(*Clark v. Holmes*, 1 Doug. [Mich.], 390; *State v. Nemaha Co.*, 10 Neb., 33; *State v. Nelson*, 21 Id., 578.) The filing of a petition properly signed is jurisdictional. The board is an inferior tribunal, and the facts which give it jurisdiction must appear on its record. (*Smith v. Rice*, 11 Mass., 513; *Henry v. Estes*, 127 Id., 474; *Hall v. Howd*, 10 Conn., 514; *Newman v. Manning*, 89 Ind., 422; *State v. Berry*, 12 Ia., 58; *State v. Metzger*, 26 Mo., 65; *Chandler v. Nash*, 5 Mich., 409; 1 Black, Judgments, secs. 228, 282; *Jolley v. Foltz*, 34 Cal., 321; *Van Dusen v. Sweet*, 51 N. Y., 381; *Bridgeport Savings Bank v. Eldredge*, 28 Conn., 556; *Evansville R. Co. v. Evansville*, 15 Ind., 395; *Shawhan v. Loffer*, 24 Ia., 217; *Bonsall v. Isett*, 14 Id., 309; *People v. Hagar*, 52 Cal., 182; *S. C. & P. R. Co. v. Washington Co.*, 3 Neb. 41; *Doody v. Vaughn*, 7 Id., 28.) The findings of the board of county commissioners are not conclusive. (*State v. Nemaha Co.*, 10 Neb., 36; *Laws v. Vincent*, 16 Id., 208; *State v. Eggleston*, 10 Pac. Rep. [Kan.], 8, and cases cited; *Bolton v. Jacks*, 6 Robt. [N. Y.], 166; *Brown v. Mayor of N. Y.*, 3 Hun [N. Y.], 685; *Stone v. Miller*, 62 Barb. [N. Y.], 430; *Sheldon v. Newton*, 3 O. St., 499; *Borden v. Fitch*, 15 Johns. [N. Y.], 121; *Harrington v. People*, 6 Barb. [N. Y.], 607; *People v. Cassels*, 5 Hill [N. Y.], 164; *Walker v. Moseley*, 5 Denio [N. Y.], 102; *Cooper v. Sunderland*, 3 Ia., 126.) There was no error in refusing a continuance. (*La Londe v. Supervisors*, 49 N. W. Rep. [Wis.], 960; *Hayes v. Jones*, 27 O. St., 218; *Dutten v. Hanover*, 42 O. St., 215; *State v. Nemaha Co.*, 10 Neb., 32.) Supplemental petition. (*Loomis v. Bailey*, 45 Ia., 400.)

*R. B. Daley*, *M. B. Slocum*, *W. L. Joy*, and *S. G. Hopkins*, contra, cited: *State v. Nelson*, 20 Neb., 572; *Smiley v. Sampson*, 1 Id., 70; *Sheldon v. Newton*, 3 O. St., 500; *Currie v. Paulson*, 45 N. W. Rep. [Minn.], 855; *O'Brien v. Gaslin*, 20 Neb., 350; 12 Am. & Eng. Ency. Law,

70 ; 7 Id., 966; *State v. Nemaha Co.*, 10 Neb., 35; *County Seat of Linn Co.*, 15 Kan., 500; *Att'y Gen'l v. Lake Co.*, 33 Mich., 289 ; *Herrick v. Carpenter*, 6 N. W. Rep. [Ia.], 575; *McKinney v. Com'rs*, 4 S. Rep. [Fla.], 855; *State v. Com'rs*, 18 Neb., 283; *Hickey v. Supervisors*, 28 N. W. Rep. [Mich.], 771 ; *Tobin v. Young*, 24 N. E. Rep. [Ind.], 121; *Hill v. Truby*, 11 Atl. Rep. [Pa.], 89 ; *Ford v. Ford*, 10 N. E. Rep. [Ind.], 648; *Plano Mfg. Co. v. Frawley*, 32 N. W. Rep. [Wis.], 771 ; *Citizens & M. Sav. Bank & T. Co. v. Gillespie*, 9 Atl. Rep. [Pa.], 73; *Bostwick v. Mahoney*, 14 Pac. Rep. [Cal.], 832 ; *Terre Haute v. Hudnut*, 13 N. E. Rep. [Ind.], 686 ; *State, ex rel. Newell, v. Purdy*, 36 Wis., 222; *Denver, etc., Co., v. Middaugh*, 21 Pac· Rep. [Colo.], 565; *Ellis v. Karl*, 7 Neb., 389.

MAXWELL, CH. J.

This is a proceeding in error to the district court of Dakota county, where the cause was heard before Judge W. F. Norris, upon a proceeding in error to the board of county commissioners of that county.

The facts disclosed by the record are that a petition was presented to the county board of Dakota county, asking said board to call an election for the purpose of voting upon the question of the relocation of the county seat of Dakota county. The application was resisted by a remonstrance of what was shown and claimed to be more than two-fifths of the legal voters of Dakota county, and the remonstrants filed their answer, setting up and alleging that the petition was insufficient, and denying that the persons whose names were set out in the answer, and were attached to the petition as signers, were legal voters of the county, the number of the names alleged to be fraudulent being 201, and the names being set out in the remonstrants' answer. It was also alleged in the answer that thirty-six persons and more had signed the petition more than once; the names of the thirty-six known to have done so were set

set out in schedule B, attached to the answer.   The answer also contained an allegation that a large number of names signed to the petition were forgeries, the same never having been signed by the persons named, and that about 200 persons had been induced to sign by bribery and the corrupt use of money; that 269 persons who had signed the petition had subsequently signed a remonstrance against the same, and had therefore rendered void their signatures to said petition; and that they had requested the board to remove their names from said petition.   Their names were set out in schedule "D" attached to the answer, the number being 269; that forty-one names signed to the petition had not shown themselves to be lawful signers, and failed to comply with section 1, article 3, chapter 17, of the Compiled Statutes in the matter of giving the place of their residence, their ages, and time of residence in the county; their names were set out in schedule "E" attached to the answer; that by the remonstrance containing 730 signatures of the legal voters of said county more than two-fifths of the legal voters of said county had remonstrated and protested against the election being called, leaving less than three-fifths to be classed as petitioners.

It appears that a supplemental petition was filed and also an answer to it was presented, containing practically the same denials and averments, setting out the names therein attacked, by proper schedules attached thereto.

The record states that thereupon the board proceeded to consider the petition and remonstrance, calling two from the petitioners and two from the remonstrators and others as needed, and then took up for consideration the supplemental petition; and now, at this time, on motion of the remonstrators that the names on the supplemental petition that appear on the remonstrance be stricken therefrom and not counted for the petitioners, upon consideration of which the same was overruled, to which ruling the remonstrators duly excepted for the reason stated by them

that more than forty of the names that appear upon the remonstrance are signed upon said petition. Thereupon the board proceeded to compare the names of the petitioners and exclude duplicate signatures, whereupon remonstrators dictated entry as follows: "Now at this time, after the names upon the petition and the remonstrance had been counted by the commissioners, came Mell A. Schmied, Atlee Hart, M. O. Ayres, Fred Schriever, and about 720 other remonstrators and objectors, and ask the board herein to allow them to prove that there are 720 legal voters of Dakota county remonstrating against the calling of said special election; that there are 150 persons whose names appear upon said petition and supplemental petition and who have been counted as petitioners, who were induced to sign the same by fraud and misrepresentation; that there are 200 persons whose names appear on said petition and supplemental petition and who have been counted as petitioners for said special election who were induced to sign the same by the payment of money to them and by the promise that a court house would be built free of cost to said Dakota county and the expense of said special election would be paid by private citizens and be without cost to Dakota county; that 201 persons whose names appear on said petition and supplemental petition and who have been counted as petitioners for said special election are not legal voters of said Dakota county; that fifty persons whose names appear on said petition and supplemental petition and who have been counted as petitioners for said special election have not complied with the law relative to the signing of said petition, in that they have failed to give their correct section, township, and range on which, or town or city in which, they reside, or have failed to give their correct age and time of residence in said county, or have failed to give their correct names; that thirty persons whose names appear upon said petition and supplemental petition and who have been counted as petitioners

for said special election have signed said petition more than once; that seventy-nine persons who have signed said supplemental petition have signed the same since the filing of the original petition herein and have been counted as petitioners for said special election; that thirty-five persons who have signed said petition and who have been counted as petitioners for said special election are the identical persons who have also signed a remonstrance against the calling of said special election; and that forty persons whose names appear on the supplemental petition and who have been counted as petitioners for said special election have signed a remonstrance against the calling of said special election since the time at which they signed said supplemental petition. Which request to be allowed to prove the above was denied, to which the movers above named duly excepted, and the board proceeded at once to call an election.

The board found that there were 1,028 names signed to the petition and seventy-nine names to the supplemental petition, making in all 1,127, and that 841 of these were legal voters; 286 of the 1,127 names were rejected. If the claim of the plaintiffs in error can be proved in full there were names procured by fraud ...................... 150
There were names procured by bribery.................. 200
There were illegal voters ................................. 201
There were those that did not comply with the law...    50
There were those that signed more than once...........   30
There were those that signed both remonstrance and
    petition ..............................................   35
There were those that signed the remonstrance since
    signing the supplemental petition .....................   40
                                                          ———
                                                          706

Sec. 1, art. 3, ch. 17, Comp. Stats., provides: "Whenever the inhabitants of any county are desirous of changing their county seat, and upon petitions therefor being pre-

sented to the county commissioners, signed by resident electors of said county equal in number to three-fifths of all the votes cast in said county at the last general election held therein, said petition shall contain, in addition to the names of the petitioners, the section, township, and range on which, or town or city in which, the petitioners reside, their ages and time of residence in the county, it shall be the duty of such board of commissioners to forthwith call a special election in said county for the purpose of submitting to the qualified electors thereof the question of the relocation of the county seat. Notice of the time and the places of holding said election shall be given in the same manner, and said election shall be conducted in all respects the same as is provided by law relating to general elections for county purposes. The electors at said election shall designate on their ballots what city, town, or place they desire said county seat located at or in, and any place receiving three-fifths of all the votes cast shall become and remain, from and after the first day of the third month next succeeding such election, the county seat of said county."

The petition must be signed by resident electors of said county equal in number to three-fifths of all the votes cast in said county at the last general election, and in addition to such names shall state the section, township, and range on which, or the town or city in which, the petitioner resides, together with his age and time of residence in the county. The evident purpose of these provisions is to identify every petitioner so as to protect the *bona fide* residents of the county. The latter being permanent residents of the county may reasonably be supposed to be anxious to promote its welfare either by the removal of the county seat when deemed necessary or in any other respect; therefore only resident electors have any right to sign such petition. Persons who are stopping temporarily in the county are not resident electors within the meaning of the

statute above quoted; and to justify the board in calling an election for this purpose it must appear that at least three-fifths of the resident electors of the county, as shown by the number of votes cast at the preceding general election, signed the petition. When such number do sign a petition, it may be assumed that an election will result in a change of the county seat. The words " resident electors" are evidently used to limit the petitioners to that class. Suppose a railway was being constructed through Dakota county and that 1,000 men were brought into that county and employed thereon, and they all should sign a petition to remove the county seat, would any one contend that a petition containing such signatures alone would be sufficient to justify calling an election? We think not. Each one of such signers might be an elector, but he would not be a "resident" elector, and therefore not eligible as a petitioner. And if a petition whose signers were all of that class would not be sufficient, then to the extent that such temporary resident sign the petition it is insufficient. If the petition fails to show the age of the petitioner, place of residence, or time that he has resided in the county, such vote cannot be counted for the purpose of calling an election, and it is the duty of the board to reject the same. So of names which are duplicated either by mistake or design— such duplicates should be stricken out. So of fictitious or forged signatures. All such are a fraud on the resident electors of the county as well as the county board. No self-respecting tribunal would for a moment sanction the use of such means as a pretext for giving it apparent jurisdiction. As to the charge of bribery to procure signatures, it is sufficient to say that it seems scarcely possible that bribery would be resorted to for the purpose of procuring signatures. If, however, the proof should show that it had been resorted to, it would be a fraud upon the people of the county. If the facts set up in the remonstrance of the plaintiffs in error are true, and which, to quite an extent,

they proved, and offered to prove other facts, then the number of resident electors who petitioned for the removal of the county seat fell far short of the necessary three-fifths, and there was no authority in the county board to call the election. In any event the record fails to show that three-fifths of the resident electors of Dakota county did sign the petition, and as such petition is jurisdictional, there was no authority in the county board to call the election, and all proceedings thereunder are void. The theory of the law is that a petition containing the names of *all* resident electors of the county who may desire the submission of the question shall be presented to the county board. Upon the presentation of the petition a reasonable time should be given other resident electors of the county and others an opportunity to examine the list of petitioners and see that the signers are what they purport to be. That is the very purpose of requiring the age and residence of each signer. Therefore, after the presentation of the petition, those opposed to the calling of an election may in good faith interpose any valid objection under oath to any person who may have signed the petition. The law does not contemplate a supplemental petition. In the procedure in courts a supplemental petition is permitted to include certain matters which have arisen since the filing of the original petition, as in an action to foreclose a mortgage for one or more installments then due, if other installments should become due before a decree is rendered they may be set up by supplemental petition. If, however, the installments set forth in the supplemental petition were due when the action was brought, a supplemental petition is not available. So in this case, the petitioners must present their full petition at the outset. If after a fair examination of the petition it is found to contain the necessary number of signatures of resident electors, it will be the duty of the board to call an election. If it does not contain such number, then it is the duty of such board to

Ayres v. Moan.

refuse to call the same.  A contest of this kind is nearly always attended with some irritation, and animosities are liable to be engendered which may require years to allay. It is important, therefore, that the county board act with care and caution in the case.  The board is not to make this a pretext for not doing its duty either in calling or refusing to call an election.  It is to be governed by the evidence before it or within its reach, and, as far as possible, give effect to the law and protect the rights of all.

In regard to the alleged bribery of voters it may be well to say that our laws are designed to secure the free and voluntary expression of the electors at every election.  To secure this every form of bribery is frowned upon by the courts; and the fact that the election is for the relocation of a county seat, instead of calling for a relaxation of the rule, renders it important that no corrupt means be sanctioned which would or might have a tendency to prevent the voluntary expression of a part or all of the electors. As was said in *Herman v. Edson,* 9 Neb., 156: "The whole course of our legislature is against every species of bribery or inducement of that nature at elections.  What would be thought of a candidate for a public office who should promise the electors $3,000, or any other sum, in case of his election?  And does it make any difference that the candidate is a town contending for the county seat instead of an individual seeking an office?  It may be said that the location of a county seat at a particular point will enhance the value of property at that place sufficiently to enable the citizens to offer a bonus as an inducement for its location.  But may not a candidate for an office say with equal propriety that if he secures his election his income will thereby be increased so that he will pay each voter a specified sum?  The cases do not differ in principle, but merely in the mode of compensation.  Then, if a candidate for a county seat may offer a bonus of $3,000, why not $30,000, or a still greater sum?  The intention

of the law is, as is said in the case of *.People v. Hamilton Co.*, 3 Neb., 252, to give each voter of a county an opportunity to express by his ballot his choice. for the county seat." The rule thus early announced has been scrupulously adhered to by this court, and the effect has been that law and order have been maintained and removal cases confined to those counties where there was a strong public sentiment in favor of the same. The judgment of the district court is reversed, and also the order of the county board calling the election, and all proceedings thereunder, and the cause is remanded to the district court for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.