CHARLES G. CREWS ET AL. V. S. E. COFFMAN ET AL.

FILED MAY 1, 1893. No. 5719.

1. **County Seat:** RELOCATION: COUNTY BOARD: ELECTION: PETITION. To entitle a county board to call an election for the removal of a county seat a petition must be presented to it by resident electors of the county equal in number to three-fifths of all the votes cast in the county at the last general election.

2. ————: ————: PETITION: PETITIONERS. The petition must show the section, township, and range on which, or the town or city

Crews v. Coffman.

in which a petitioner resides, together with his age and time of residence in the county.

3. ———: ———: Sufficiency of Petition: Objections: Hearing. Where objections are made by any resident elector on oath charging that a certain number of the petitioners are minors, certain other number are not electors, certain names are fictitious, a certain number have been bribed, the aggregate of which will reduce the number of petitioners below three-fifths of the votes cast at the preceding general election, it is the duty of the board to set a reasonable time for a hearing of said objections to enable parties to offer proof in support of their charges.

4. ———: ———: ———: ———: ———. Parties interested in the matter are entitled to examine the original petition in the office of the county clerk before the election is called and should have a reasonable time for that purpose. It is not sufficient to furnish a certified copy as such parties have the right to see the purported signatures of the petitioners.

Error from the district court of Hitchcock county. Tried below before Welty, J.

J. W. Cole and Reese & Gilkeson, for plaintiffs in error.

R. O. Adams, F. M. Flansburg, and W. S. Morlan, contra.

Maxwell, Ch. J.

This is a proceeding in error from the district court of Hitchcock county to reverse the judgment of that court affirming the action of the board of county commissioners calling an election for a relocation of the county seat. It appears from the record that on the 23d of June, 1892, at 9 o'clock A. M., a petition for the relocation of the county seat was presented to the board of county commissioners of that county; that G. V. Hunter, an elector and resident of that county, protested against calling an election until an opportunity could be given to examine the petition. The protest was overruled. Various motions were made on behalf of the plaintiff for an opportunity to examine the petition away from the crowd that seems to have

filled the room where the board was sitting. These were overruled. Whereupon J. W. Cole, one of the attorneys for the plaintiff, filed an affidavit as follows:

"In the matter of the petition to call an election to vote to remove the county seat.

"John W. Cole, being first duly sworn, on his oath says: That he is one of the attorneys for the defendants in this case; that he has urgently and persistently sought, by every reasonable means made known to him, to procure a full, free, and complete examination of the plaintiffs' petition herein; that, in addition to asking this court and the plaintiffs' attorneys for this privilege of examining said petition privately, as shown by the records of this court, affiant and his associate counsel and defendants, all of whom are resident electors and qualified voters of Culbertson, Hitchcock county, Nebraska, asked this court for the privilege of taking the said petition to some quiet part of the court room for inspection and examination, all of which was refused by this board at the request of the petitioners; that whereas this board ruled and refused to allow this affiant, his associates, or their clients, to use, inspect, or examine said petition except in the presence of this board or of the petitioners and their attorneys, the defendants having been unable to carefully inspect said petition, or prepare a full defense thereto; that affiant, so far as his trammeled position would admit, made examination of said petition and has compared what the petitioners pretend to be a copy of said petition with the original, and affiant says that said copy is not a true copy of the original; that even if said copy was a true copy, defendants could not determine from it whether the petition had been properly signed or not; that among other discoveries of irregularities it is apparent that a large list of the names signed to said petition are fraudulent, forged, and that this, with many other facts, cannot be fully determined from the petition itself. This affiant, for himself

and his associates, says that in view of the above facts, and
in view of the character and nature of the case, the time
granted for the inspection of said petition in which to pre-
pare a defense thereto is wholly inadequate, wherefore
affiant, for himself and on behalf of his associates and
clients, now moves the court that further time be given
them in which to examine said petition and prepare their
defense thereto, and they be allowed full, free, and untram-
meled use of said petition for such purpose."

The other attorneys for the plaintiffs also swore that the
facts stated in the affidavit of Cole are true. There is no
contradiction of this in the record, so that it will be re-
garded as true. Being unable to obtain time to examine
the names on the petition the plaintiffs filed the following
answer:

"In the matter of the petition of S. E. Coffman et al.,
      praying for a calling of a special election to vote upon
      the question of removing and locating the county seat
      of Hitchcock county, Nebraska.

"Comes now Charles G. Crews, a resident elector and tax-
payer of said Hitchcock county, Nebraska, for himself and
on behalf of 550 other resident taxpayers and duly qualified
voters of said Hitchcock county, and objects and remon-
strates against this honorable board calling or proceeding
to call an election upon the petition herein filed, and for
cause assigns the following grounds of objection and remon-
strance :

"1. Because the pretended petition is insufficient in law
to authorize the calling of an election as prayed for therein.

"2. Said pretended petition is not signed by the requisite
number of qualified resident voters of Hitchcock county,
Nebraska, to authorize the calling of said election.

"3. That a large number, to-wit, 111, of said pretended
petitioners are minors, persons under the age of twenty-one
years.

"4. Because a large number, to-wit, 358, of said pre-

tended petitioners are and were non-residents of the county of Hitchcock, state of Nebraska.

"5. Because a large number of said pretended petitioners, to-wit, 600, were procured to sign said pretended petition by being misled, and on account of facts having been misrepresented to them and by unlawful and undue influences.

"6. Because 351 of said pretended petitioners were induced to sign said pretended petition by bribery, in this, to-wit, that the residents and property holders of Trenton represented that they would build a court house free of expense to the petitioners of the county.

"7. Because a large number, to-wit, 350, of said petitioners desire to withdraw their names from said pretended petition.

"8. Because there is now pending in the supreme court of the state of Nebraska another action between substantially the same parties and upon the same cause of action as the cause attempted to be set up in the petition herein, and the said cause of action pending is still undetermined and undecided.

"9. And these remonstrators deny that any of said pretended petitioners are resident electors and qualified voters of Hitchcock county, Nebraska; deny that said pretended petitioners, or any of them, reside at or upon the lands as described in said pretended petition; deny that the age of, residence, and time of residence in the county is correctly given; and especially deny that said pretended petition is signed by a number of qualified voters, electors, equal to three-fifths of the vote of Hitchcock county cast at the last general election.

"10. These remonstrators allege that a large number of said pretended petitioners, to-wit, 326, are fictitious names, and that no such persons reside, live, or exist in Hitchcock county.

"11. These remonstrators further allege that a large

number of said pretended petitioners, to-wit, 178, are foreigners, who have never become citizens of the United States, nor have they declared their intention to become citizens as by law required.

"12. That a large number, to-wit, 130, of said names that appear upon said petition were not signed by the persons themselves, nor were they signed to said pretended petition with their knowledge or consent, and were forged thereto; these defendants especially deny that the pretended certified copy of said petition tendered defendants' attorneys is a true copy, and allege the fact to be that upon such comparison as the defendants were able to make it was evident said pretended copy was not a true copy of said petition, all of which could have been proved had this board allowed the said pretended copy filed as part of the record, and these defendants say that by reason of the facts, that this court refused to allow them or their attorneys sufficient time to examine said petition, and in view of the further fact that the only examination that these defendants have been permitted to make of said petition was in the presence of the petitioners and their attorneys, and this board, on account of the amount of matter contained in said petition, it is beyond the power of the defendants to make this answer more specific, definite, and certain.

"Wherefore your remonstrators pray that a time be set for hearing the issues raised by the remonstrance herein to said pretended petition; that a reasonable time be given these remonstrators to prepare their defense and procure their evidence to sustain the same; that upon the final hearing of said issue said pretended petition and the prayer thereof be overruled and that said pretended petition be dismissed."

This was duly verified. The answer was overruled and the election called. The case was taken on error to the district court, where a large amount of testimony was taken by the defendants in error and the action of the county commissioners affirmed.

Section 1, article 3, chapter 17, Compiled Statutes, pro-
vides: " Whenever the inhabitants of any county are de-
sirous of changing· their county seat, and upon petitions
therefor being presented to the county commissioners,
signed by resident electors of said county, equal in number
to three-fifths of all the votes cast in said county at the
last general election held therein, said petition shall contain,
in addition to the names of the petitioners, the section,
township, and range on which, or town or city in which
the petitioners reside, their ages and time of residence in
the county, it shall be the duty of such board of commis-
sioners to forthwith call a special election in said county
for the purpose of submitting to the qualified electors
thereof the question of the relocation of the county seat.
Notice of the time and the places of holding said election
shall be given in the same manner, and said election shall
be conducted in all respects the same as is provided by
law relating to general elections for county purposes. The
electors at said election shall designate on their ballots
what city, town, or place they desire said county seat lo-
cated at or in, and any place receiving three-fifths of all
the votes cast shall become and remain, from and after the
first day of the third month next succeeding such election,
the county seat of said county." It will be observed that
the petition is to be signed by " resident" electors, and in
order to show that they are such the locality where each
one resides must be stated in the petition. A petition
signed by three-fifths of the resident electors of the county
therefore is essential to give the county board jurisdiction.
To be an elector of the county is not enough, he must be
a resident elector. The object of this provision no doubt
was to prevent any action being taken on a petition signed
by persons temporarily residing in a county, such as per-
sons engaged in constructing a railroad and who would
leave as soon as the work was finished. (*Ayers v. Moan*,
34 Neb., 210.) To ascertain if the signers or any consid-

erable part of them are resident electors, where that fact is
denied, may require a reasonable time to examine the
names and make inquiry in regard to the same.    The pre-
sentation of a petition signed by the requisite number of
names, where no objection is made, no doubt will be suffi-
cient to justify the board in calling an election.    Where,
however, an answer is filed containing charges of fraud that
many of the names are fictitious, forged, or those of minors
or persons not electors, time must be given to produce evi-
dence of those charges.

In *State v. Nemaha County*, 10 Neb., 35, it is said : " If
parties have been induced by misrepresentation to sign such
petition, they may undoubtedly go before the board and
state the facts as to such misrepresentations and demand
that their names be stricken from the petition or not counted
as petitioners.    The commissioners should not call an elec-
tion for such purpose, unless they find at the time of call-
ing said election that more than three-fifths of the voters,
as shown by the return of the last general election, are then
petitioners in favor of such election.    It is not the inten-
tion of the law to subject the people of a county to expense,
annoyance, and animosities not unfrequently attending an
election for the relocation of a county seat, unless it shall
appear that the requisite number of voters at the time of
calling the same are in favor of such election.    The peti-
tion is only a means of determining that at least three-fifths
of the legal voters of a county are in favor of the reloca-
tion of a county seat, and that an election called for the
purpose of submitting such question to the people of the
county will in all probability result in a relocation of the
county seat."    What is said in that case is applicable in
this.    If there are in fact more than three-fifths of the res-
ident electors in favor of removing the county seat and have
signed a petition for that purpose, there will be no occa-
sion for undue haste in acting upon the petition.    It will
bear the closest scrutiny, and when an election is called in

pursuance thereof the result will not be uncertain. On the other hand, if the petition is signed by persons who are not resident electors, or minors, and names of fictitious persons added, it may be expected that those presenting the petition will urge haste in acting upon it, so that the names cannot be scrutinized, and false, fictitious, and fraudulent names, if such there be, stricken out. If the position contended for by the defendants' attorneys should be established as the law, viz., that there is no authority to sift out the spurious names on the petition, then it would be possible for one person to file a petition for the removal of a county seat with fictitious names and imaginary places of residence and file the same with the county board, whose duty it would thereupon be to call an election for the purpose indicated. No one will contend that such a petition would not be open to examination; yet, suppose that one-half, one-fourth, or any other number, was fraudulent or fictitious, the right and duty to strike them from the petition must exist as a means of protecting the county board from being imposed upon and the people of the county from the animosities, strife, and expense of a needless county seat election. This examination is to be made before the county board.

In *Ellis v. Karl*, 7 Neb., 388, Judge LAKE, in speaking for the court, says: "It appears that in the exercise of the jurisdiction thus conferred the commissioners received the petition for relocation, and adjudging it in all respects sufficient, made and entered of record this order: 'Whereas, on the 20th day of August, 1877, was presented by Samuel Windrom to the board of county commissioners of Saline county a petition calling for a relocation of the county seat, which said petition was signed in manner required by law by citizens of said county in number more than three-fifths of the votes cast at the last general election.' Thereupon, at the same time, they ordered in due form the calling of the first election on this question, to be held on the 4th of September, 1877.

"It does not appear that either the genuineness or the sufficiency of the petition was questioned before the com missioners, but it is alleged that all of the defects complained of were fully known to them when they made the order for the election. And it is further alleged that the plaintiffs were wholly ignorant concerning them until more than twenty days had elapsed after the decision had been made, which seems to be thought a sufficient excuse for not moving earlier in this attack upon the action of the board.

"We are of the opinion that under this statute the proper place to have raised these questions concerning the petition was before the commissioners themselves, and that, having failed to make the objections there, and no sufficient reason for the failure being shown, the plaintiffs are in no situation to ask the aid of a court of equity."

Any resident elector of a county has a right to examine a petition filed with the county clerk which purports to contain the names and places of residence of a sufficient number of resident electors to require the county board to call an election for the removal of the county seat. This, by the act of filing, becomes a public document and is open to inspection, and a reasonable time must be given when desired for that purpose. The petition is in the care of the county clerk and he is responsible for its safe keeping, but the instrument may be examined in his office at any or all times during business hours, and five days on the showing made by the plaintiffs would not seem an unreasonable time to make a thorough examination of 860 names scattered, as they purport to be, over all parts of the county. Considerable stress is laid upon the offer to furnish a certified copy of the petition to the plaintiff, but that is not sufficient. The party has the right to inspect the original, to observe the several signatures and see if they purport to have been signed by each individual; in other words, if they appear to be genuine, or are in the handwriting of a few inter-

56

ested persons. This is one of the means of detecting spurious signatures and a certified copy is not sufficient.

In *State v. Nelson*, 21 Neb., 572, a petition purporting to contain the names of 644 resident electors was presented to the county board asking to call a special election for the relocation of the county seat; the whole number of votes cast in said county at the preceding election was 729. A remonstrance against calling such election, signed by a very large number of persons purporting to be electors of said county, was presented to the county board, in which it was alleged that the petition was signed by non-residents, minors, and other persons not authorized to sign the same. The board thereupon investigated the matter and found that many persons who did not possess the necessary qualifications had signed said petition, and the number of resident electors who had signed the same was less than three-fifths of all the votes cast at the preceding election, and therefore refused to call the election, and this court sustained the order.

The case at bar, in many of its features, is like that of *Ayres v. Moan*, 34 Neb., 210. In that case the same undue haste was shown by the county board as in this, and a refusal of such board to permit electors to examine the petition and sift out the illegal names. The remonstrators thereupon filed an answer similar in many respects to that in this case. The county board overruled the answer and called an election, and the action of the board was sustained by the district court, but this court reversed all the proceedings and set the election aside. The same rule will be applied in this case. To justify a county board in calling an election for the relocation of the county seat it must clearly appear that the petition for such election is signed by at least three-fifths of the resident electors in the county, as shown by the votes cast at the preceding election. Good faith on the part of the county board requires it to act as an impartial tribunal, to be governed by the

evidence in the case, and to give all the resident electors in the county a reasonable opportunity to show that names signed to the petition are forgeries, fraudulent, or fictitious, or that they are those of *bona fide* resident electors of said county. The judgment of the district court and also of the county commissioners is reversed and the cause remanded to the county board of Hitchcock county for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.

THE other judges concur.