[No. 5749. Decided February 26, 1906.]

W. W. HINDMAN, *Relator, Respondent,* v. L. F. BOYD, *as Mayor of the City of Spokane, et al., Appellants.*[1]

APPEAL — DISMISSAL — CESSATION OF CONTROVERSY — INVOLUNTARY COMPLIANCE WITH JUDGMENT. An appeal from a mandate compelling municipal authorities to submit charter amendments to a vote of the people will not be dismissed for the reason that the defendants have complied with the order, where such compliance was involuntary, and only after having been denied a supersedeas of the judgment upon an appeal therefrom.

COURTS—SESSIONS—VISITING JUDGES. Under Const., art. 4, § 7, a visiting judge of the superior court may hold a session of the court at the request of a resident judge, without any request by the governor, and although all of the resident judges are also holding sessions in the same county at the same time.

1Reported in 84 Pac. 609.

2—42 WASH.

**18**         HINDMAN v. BOYD.

CONSTITUTIONAL LAW—MANDAMUS. The constitutionality of a law may be raised in mandamus proceedings by ministerial officers proceeded against for its nonenforcement or for noncompliance therewith.

CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS—CHARTER AMENDMENTS—EXPENSE OF SUBMISSION—IMPOSITION OF TAX. Laws 1903, p. 393, requiring the municipal authorities to submit to a vote of the people a charter amendment when petitioned so to do by fifteen persons of the qualified voters of the city, thereby compelling the city to incur the expense of such election, is not unconstitutional as imposing a tax upon cities, within the purview of Const., art. 11, § 12, since the constitutional prohibition against the legislature's imposing taxes upon municipalities cannot be held to relate to the expense of such an election thereby preventing the people from exercising a fundamental power, which may be exercised in the manner provided by general laws.

SAME—DELEGATION OF LEGISLATIVE POWER TO PEOPLE—GRANT OF MUNICIPAL FRANCHISES. Bal. Code, § 740, providing that the legislative powers of cities shall be vested in the mayor and city council, does not prevent the adoption of charter amendments requiring the submission of the matter of granting franchises to a vote of the people, and such a charter amendment is not unconstitutional as an unlawful delegation of legislative power to the people.

MUNICIPAL CORPORATIONS—CHARTER AMENDMENTS—QUALIFICATION OF PETITIONERS FOR SUBMISSION. Registration is not a necessary element in the qualification of a voter to entitle him to sign a petition for the submission of charter amendments to a vote of the people, under Laws 1903, p. 393.

SAME—QUALIFICATIONS OF PETITIONERS—EVIDENCE—VERIFICATIONS—COMPETENCY. Affidavits verifying the genuiness of the signatures of petitioners for the submission of charter amendments to a vote of the people under Laws 1903, p. 393, are not competent evidence of the qualifications of the signers.

SAME—DETERMINATION OF CITY COUNCIL. Under Laws 1903, p. 393, it is the duty of the city council to determine in the first instance the qualifications of the signers of a petition for the submission of charter amendments to a vote of the people.

SAME—ANSWER OF CITY—SUFFICIENCY—DEMURRER. In mandamus proceedings to compel a city council to submit charter amendments to a vote of the people, the answer of the city states a valid defense when it puts in issue the qualifications of the signers of the petition and alleges that their signatures were procured by fraud and that the verifications were not properly taken; and it is error to sustain a demurrer thereto.

APPEAL—DECISION. Where, upon an appeal from a writ of mandate requiring the submission of charter amendments to a vote of the people, at the time of the hearing of the appeal the amendment has been submitted to a vote, and carried, the judgment will not be reversed for error in sustaining a demurrer to the answer of the city, but the cause will be remanded for the purpose of taking testimony upon the issues raised.

Appeal from a judgment of the superior court for Spokane county, Warren, J., entered March 25, 1905, upon findings in favor of the relator, upon sustaining a demurrer to the answer, granting a mandate to compel the submission of charter amendments to a vote of the people. Remanded for further proceedings.

*Danson & Williams, F. M. Dudley, C. P. Lund, H. M. Stephens,* and *Turner & Geraghty,* for appellants, contended that, a superior judge cannot, without assignment by the governor, hold court in any other county than that for which he has been elected. Const. art. 4, § 5; Cooley, Const. Lim. (6th ed.), p. 72. The term "qualified elector" or "qualified voter" means one who has the right to vote at an election for public officers. *State ex rel. Knowlton v. Williams,* 5 Wis. 308, 68 Am. Dec. 65; *Beardstown v. Virginia,* 76 Ill. 34; *Board of Comr's v. People ex rel. Love,* 26 Colo. 297, 57 Pac. 1080. To be a qualified voter under our constitution and statutes, the voter must have registered. Const., art. 6, § 7; Pierce's Code, §§ 4889, 4897, 4904; *State ex rel. Woodson v. Brassfield,* 67 Mo. 331; *Smith v. Wilmington,* 98 N. C. 343, 4 S. E. 489; *McDowell v. Massachusetts etc. Const. Co.,* 96 N. C. 514, 2 S. E. 351; *Duke v. Brown,* 96 N. C. 127, 1 S. E. 873; *Southerland v. Goldsboro,* 96 N. C. 49, 1 S. E. 760; *Wood v. Com'rs of Oxford,* 97 N. C. 227, 2 S. E. 653; *Smith v. Board of Com'rs,* 45 Fed. 725. In matters requiring the exercise of official judgment, or resting in the sound discretion of the person to whom a duty is confided by law, mandamus will not lie, either to control the exercise of that discretion, or to determine upon the decision which shall be

finally given. High, Extr. Legal Remedies (2d ed.), § 42; *State ex rel. Davey v. Cheetham,* 20 Wash. 64, 54 Pac. 772; *Morris & Whitehead v. Williams* 23 Wash. 459, 63 Pac. 236; *Hester v. Thomson,* 35 Wash. 119, 76 Pac. 734. Under the law it is the duty of the city council to determine the sufficiency of the petitions and the qualifications of the petitioners. *Ayres v. Moan,* 34 Neb. 210, 51 N. W. 830, 15 L. R. A. 501; *La Londe v. Board of Supervisors,* 80 Wis. 380, 49 N. W. 960; *State ex rel. Hawley v. Board of Supervisors,* 88 Wis. 355, 60 N. W. 266; *Crews v. Coffman,* 36 Neb. 824, 55 N. W. 265; *State ex rel. Morgan v. Com'rs of Nemaha County,* 10 Neb. 32, 4 N. W. 373; *State v. Nelson,* 21 Neb. 572, 32 N. W. 589; *Dutten v. Hanover,* 42 Ohio St. 215; *State v. Eggleston,* 34 Kan. 714, 10 Pac. 3; *Mayor of Kokomo v. State ex rel. Adams,* 57 Ind. 152; Charter of Spokane, § 225½. It was proper to refer the petitions to a committee and postpone action until time for an examination. *Dutten v. Hanover,* 42 Ohio St. 215. All names that are fictitious, false, repetitions, or obtained by bribery should be rejected. *Ayres v. Moan* and *Crews v. Coffman, supra.* All who wished to withdraw might do so before the council had ordered the election. *La Londe v. Board of Supervisors, supra.* The act providing for the amendment of city charters (Laws 1903, p. 393, chap. 186), is unconstitutional: (1) As vesting in other than the "corporate authorities" the power to create a debt or impose a tax. Const., art. 11, § 12; Const. (1848) Illinois, art. 9, § 5; *Updike v. Wright,* 81 Ill. 49; *People ex rel. McCagg v. Mayor of Chicago,* 51 Ill. 17; *Lovingston v. Wider,* 53 Ill. 302. (2) Because the subject is not properly expressed in the title. Const., art. 2, § 19. The rights to be granted under the proposed amendment are franchises, the granting of which is a legislative power, primarily resting in the state, now vested by the legislature in the municipality and of which power said amendment would effect a delegation contrary to the constitution. Bal. Code, § 740, Laws 1890, p. 223, § 6; Smith, Law of Mun. Corp., § 1702; *Schwede v.*

*Hemrich Bros. Brew. Co.,* 29 Wash. 21, 69 Pac. 362; *Commercial Elec. L. & P. Co. v. Tacoma,* 17 Wash. 661, 50 Pac. 592; *State ex rel. Attorney General v. Seattle Gas etc. Co.,* 28 Wash. 488, 68 Pac. 946, 70 Pac. 114; *State ex rel. Grinsfelder v. Spokane St. R. Co.,* 19 Wash. 518, 53 Pac. 719, 67 Am. St. 739, 41 L. R. A. 515; McQuillan, Mun. Ordinances, §§ 565, 567; Nellis, Street Surface Railroads, pp. 12, 13; *Walla Walla v. Walla Walla Water Co.,* 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341; *State ex rel. Attorney General v. Madison St. R. Co.,* 72 Wis. 612, 40 N. W. 487, 1 L. R. A. 771; Cooley, Const. Lim. (6th ed.), 137, 138; Const., art. 2, § 1; Bal. Code, § 739; *In re Cloherty,* 2 Wash. 137, 27 Pac. 1064; *Tacoma v. State,* 4 Wash. 64, 29 Pac. 847; *Tacoma Gas etc. Co. v. Tacoma,* 14 Wash. 288, 44 Pac. 655; *Territory ex rel. Kelly v. Stewart,* 1 Wash. 98, 23 Pac. 405, 8 L. R. A. 106. A judgment that is absolutely void may be attacked at any time in any court. Black, Judgments, § 307; *In re Yamashita,* 30 Wash. 234, 70 Pac. 482; *Dane v. Daniel,* 28 Wash. 155, 68 Pac. 446. An appeal lies from a void judgment entered without jurisdiction. *Fox v. Nachtsheim,* 3 Wash. 684, 29 Pac. 140; *Sheppard v. Guisler,* 10 Wash. 41, 38 Pac. 759; *State ex rel. Hibbard & Co. v. Superior Court,* 21 Wash. 631, 59 Pac. 505; *State ex rel. Washington etc. Imp. Co. v. Moore,* 21 Wash. 629, 59 Pac. 505.

*James T. Burcham, Chas. A. Murray, Merritt & Merritt,* and *Happy & Hindman,* for respondent, contended, *inter alia,* that, the visiting judge had authority to preside upon invitation of a local judge. Const., art. 4, §§ 5, 7; *State v. Holmes,* 12 Wash. 169, 40 Pac. 735, 41 Pac. 887; *State ex. rel. Coughill v. Sachs,* 3 Wash. 691, 29 Pac. 446; *First Nat. Bank v. Parker,* 28 Wash. 234, 68 Pac. 756. Appellants waived their objection to the jurisdiction. 2 Cyc. Law & Procedure, p. 660. If the judgment was void it will not support an appeal. Freeman, Judgments, § 117; *State ex rel. Crow v. Crook,* 123 Ala. 657, 27 South. 334; *Gunter v. Mason,*

125 Ala. 644, 27 South. 843. Registration is not a qualification of voters but a mere regulation of the right of franchise. Const., art. 6, §§ 1-7; *Capen v. Foster,* 12 Pick. 485, 23 Am. Dec. 632; *State v. Corner,* 22 Neb. 265, 3 Am. St. 267; *State v. Butts,* 31 Kan. 537, 2 Pac. 618; Cooley, Const. Lim., 602; *People v. Hoffman,* 116 Ill. 587, 5 N. E. 596, 8 N. E. 788, 56 Am. Rep. 793; *Webster v. Byrnes,* 24 Cal. 273; *Edmonds v. Bandbury,* 28 Iowa 267, 4 Am. Rep. 177; *Auld v. Walton,* 12 La. 129; *Hyde v. Brush,* 34 Conn. 454; *Patterson v. Barlow,* 60 Pa. St. 54; *State ex rel. Wood v. Baker,* 38 Wis. 71; *White v. Reagan,* 25 Ark. 622; *Daggett v. Hudson,* 43 Ohio St. 548, 54 Am. Rep. 832; *Stallcup v. Tacoma,* 13 Wash. 141, 42 Pac. 541, 52 Am. St. 25; Pierce's Code, § 4767; Laws 1901, p. 284; *Smith v. Board of Com'rs,* 45 Fed. 725; McCrary, Elections (4th ed.), §§ 100, 127-134; *Smith v. Wilmington,* 98 N. C. 343, 4 S. E. 489. Where allegations of a special defense amount to qualifications of a general denial they control and limit it to that extent. *Lamberton v. Shannon,* 13 Wash. 404, 43 Pac. 336; *Queen Ins. Co. v. Hudnut Co.,* 8 Ind. App. 22, 35 N. E. 397; *Warbritton v. Demorett,* 129 Ind. 346, 27 N. E. 730, 28 N. E. 613; *Derby v. Gallup,* 5 Minn. 119; *Wiley v. Keokuk,* 6 Kan. 94; *Barnum v. Kennedy,* 21 Kan. 181. It was appellants' duty to indicate in their answer the invalid names, if any, in the petition. *Schwarz v. Garfield County Court,* 14 Colo. 44, 23 Pac. 84; *Paulk v. Lee,* 117 Ga. 6, 43 S. E. 368; *Preston v. Culbertson,* 58 Cal. 198; *Lunsford v. Culton,* 15 Ky. Law 504, 23 S. W. 946; *State ex rel. Bourgeois v. Laizer,* 77 Miss. 146, 25 South. 153. An allegation upon belief is equivalent to a direct allegation. *Radway v. Mather,* 7 N. Y. Super. (5 Sandf.) 654; *Howell v. Fraser,* 6 How. Pr. 221; *McFarland v. Muscatine,* 98 Iowa 199, 67 N. W. 233; *Warburton v. Ralph,* 9 Wash. 537, 38 Pac. 140. The constitutionality of the act of 1903 cannot be raised in this proceeding. *People ex rel. Attorney General v. Salomon,* 54 Ill. 39; *Smyth v.*

*Titcomb,* 31 Maine 272; *Thoreson v. State Board of Examiners,* 19 Utah 18, 57 Pac. 175; *State ex rel. Morris v. Secretary of State,* 43 La. Ann. 590, 9 South. 776; *Commonwealth v. James,* 135 Pa. St. 480, 19 Atl. 950. The validity of the act of 1903 is supported by the following authorities: *Baker v. Seattle,* 2 Wash. 576, 27 Pac. 462; *State ex rel. Seattle v. Carson,* 6 Wash. 250, 33 Pac. 428; *State ex rel. Olmstead v. Mudgett,* 21 Wash. 99, 57 Pac. 351; *Seattle v. Chin Let,* 19 Wash. 38, 52 Pac. 324; *Smith v. Seattle,* 25 Wash. 300, 65 Pac. 612; *Tacoma etc. Light Co. v. Tacoma,* 14 Wash. 288, 44 Pac. 655; *Reeves v. Anderson,* 13 Wash. 17, 42 Pac. 625; *State ex rel. Seattle v. Carson,* 6 Wash. 250, 33 Pac. 428; *State ex rel. Cole v. New Whatcom,* 3 Wash. 7, 27 Pac. 1020; *DeMattos v. New Whatcom,* 4 Wash. 127, 29 Pac. 933; *State ex rel. Snell v. Warner,* 4 Wash. 773, 31 Pac. 25, 17 L. R. A. 263; *Kuhn v. Port Townsend,* 12 Wash. 605, 41 Pac. 923, 50 Am. St. 911, 29 L. R.-A. 445; Const., art. 11, § 12; *Marshall v. Silliman,* 61 Ill. 218; *People ex rel. Wilson v. Salomon,* 51 Ill. 57; *Lancey v. King County,* 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817. The appellants' contention that the charter amendment attempts to do an unconstitutional thing is unsound. *Hooper v. Emery,* 14 Maine 375; *Commercial Elec. L. & P. Co. v. Tacoma,* 17 Wash. 661, 50 Pac. 592; *State ex rel. Grinsfelder v. Spokane Street R. Co.,* 19 Wash. 518, 53 Pac. 719, 67 Am. St. 739, 41 L. R. A. 515; *State v. Cincinnati Gaslight etc. Co.,* 18 Ohio St. 262; *Walla Walla v. Walla Walla Water Co.,* 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341; *People ex rel. Board of Com'rs v. Common Council,* 28 Mich. 228, 15 Am. Rep. 202; *Reeves v. Anderson, supra; State v. Pullman,* 23 Wash. 583, 63 Pac. 265, 83 Am. St. 836; *Territory ex rel. Kelly v. Stewart,* 1 Wash. 98, 23 Pac. 405, 8 L. R. A. 106; Bal. Code, § 740.

HADLEY, J.—This is a proceeding in mandamus. Application was made to the superior court of Spokane county for a writ of mandate directed to the mayor, city councilmen

and city clerk of the city of Spokane, requiring them to submit to a vote of the people of said city a proposed amendment to the city charter governing the manner of granting certain franchises in the city. The affidavit in support of the application for the writ alleges, that more than seventeen hundred of the qualified voters of the city, a number equal to more than fifteen per cent of the total number of votes cast at the last preceding municipal election, have petitioned the city council to submit said proposed charter amendment at the next regular municipal election. It is averred that the council refused to take any action toward the submission of the proposed amendment, and that the relator believes the council does not intend to comply with the petitions and submit the amendment.

Application for the writ was made March 22, 1905, and on the same day the court made an order directing that an alternative writ should issue, and that the same should be made returnable on the 25th day of March, 1905. An alternative writ was issued accordingly. The defendants to the writ interposed some preliminary motions and demurrers attacking the writ, which were overruled, and thereafter they made return by way of answer. The answer denies that the petitions were signed by qualified voters equal in number to fifteen per cent of the total votes cast at the last preceding municipal election, and denies that the council refused to take any action toward the submission of the proposed amendment, or that it has done nothing in respect thereto. It is also affirmatively alleged that the various petitions which have been filed with the city clerk were obtained by fraud in obtaining the signatures thereto of a large number of individuals who were not, and are not, qualified voters of the city; that the verifications made to the petitions were made by persons who did not see the signatures made, who did not know the individuals who signed them, who were unacquainted with the signatures of the signers, and who had no knowledge of the individuals or of the signing of the peti-

tions; that the petitions were falsely verified for the fraudulent purpose of misleading the members of the council and inducing them to submit the proposed amendment in violation of law, and to thereby incur an expenditure and debt on the part of the city, unauthorized by law. It is further alleged that the demand for the submission of the amendment was made upon the council on March 21, 1905, and that the petitions were at once referred to the committee of the whole for the purpose of investigating them and ascertaining whether they were signed by the qualified voters of the city equal in number to fifteen per cent of the persons who voted at the last municipal election; that within the short time that has since elapsed the investigation has disclosed the above stated facts with reference to the procurement of signatures and the verifications of the petitions; that after striking or rejecting the names of those who were not qualified voters, the number left does not equal fifteen per cent of the persons who voted at the last municipal election. The answer contains other affirmative matter to which we need not refer at this time.

When the cause came on for hearing, the relator interposed a general demurrer to the whole answer, and the same was by the court sustained, to which ruling exception was taken. Relator then called as a witness the city clerk of the city, who identified the several petitions for the submission of the proposed amendment as being records and files in his office, and they were thereupon admitted in evidence. The relator then rested, and inasmuch as the defendants to the writ were left without pleadings by reason of the ruling of the court on the demurrer to their answer, they offered no testimony. A judgment directing a peremptory writ of mandate was then entered, and this appeal is from that judgment.

Respondent has moved to dismiss the appeal, on the ground, as he alleges, that the controversy has ceased, for the reason that the appellants have by their acts waived their right to

appeal. In support of this contention, it is brought to our attention that, after the judgment was rendered in this cause below, the appellants did submit the proposed charter amendment to a vote of the people. It further appears, however, that their acts in that regard were because of the mandate of the court below, which peremptorily commanded them to submit the amendment. They had previously appealed to this court from the judgment below, and had applied to the trial court for an order fixing the amount of the supersedeas bond pending the appeal, which was denied. Application was then promptly made to this court for a writ of mandate directed to the lower court, compelling it to fix the amount of a supersedeas bond. That application was also denied. Under such circumstances appellants obeyed the mandate of the court below, and it cannot be said that their action was voluntary. They have not waived their contention by any voluntary act of their own, but have acted solely in obedience to judicial command, and under such circumstances their right to have the action of the court reviewed on appeal should not be denied. *Dodds v. Gregson,* 35 Wash. 402, 77 Pac. 791. Other grounds mentioned in the motion to dismiss the appeal we think are also insufficient, and the motion is denied.

The first point urged by appellants is that the judge who tried this cause was not competent to sit as a court under the circumstances. The Honorable W. T. Warren, a regularly qualified judge of the superior court for the counties of Lincoln and Adams, was at the time acting as a judge in Spokane county, at the request of the Honorable Henry L. Kennan, one of the judges for Spokane county, It is argued that, under the statutes of this state, Spokane county is entitled to have, and does have, three superior judges; that on the day this cause was heard, each of said judges held a session of said court in Spokane county, and that inasmuch as Judge Warren was not assigned by the governor of the state to act in Spokane county at the time, he therefore acted without

authority. This contention is based upon art. 4, § 5, of the state constitution, the pertinent portion of which is as follows:

"In any county where there shall be more than one superior judge, there may be as many sessions of the superior court at the same time as there are judges thereof, and whenever the governor shall direct a superior judge to hold court in any county other than that for which he has been elected, there may be as many sessions of the superior court in said county at the same time as there are judges therein or assigned to duty therein by the governor."

It is contended that, under the above provision, there could have been but three sessions of the superior court in Spokane county on the day in question, unless additional judges had been assigned thereto by the governor. Section 7, art. 4, of the constitution, however, provides as follows:

"The judge of any superior court may hold a superior court in any county at the request of the judge of the superior court thereof, and upon the request of the governor it shall be his duty to do so."

Under the last quoted provision it is clear that a visiting judge may act at the request of a resident judge and without the request of the governor, and that upon the request of the latter it becomes his duty to do so. The two provisions must be construed together so as to give harmonious effect if possible. It is clear that the constitution designates two methods for the assignment of visiting judges. If the above portion of § 7 should be read as a part of § 5, and it may properly be so read, then we think the intention appears that there may be as many sessions in a county at one time as there are local and assigned judges. We therefore believe that the provision of § 7 should be held to be a mere enlargement of that in § 5, to the effect that there may be as many sessions as there are resident judges and additional assigned judges, whether assigned by the governor or by request of a local judge. We therefore hold that the trial judge was competent to act.

The important question presented by the appeal is, Did

the court err in sustaining the demurrer to the answer? Appellants present several reasons which they urge against the ruling on the demurrer. The answer expressly challenges the constitutionality of the act of 1903, chapter 186, page 393, of the session laws of that year. It was by authority of that act that the action of the council was invoked for the submission of the proposed amendment. By reference to the statute it will be seen that, when qualified voters of the city, equal in number to fifteen per cent of the total number of votes cast at the last municipal election, shall petition the city council for the submission of a proposed charter amendment, it becomes the duty of the council to submit the question at the next regular municipal election, occurring thirty days or more after the petition is filed. The answer avers that the publication of the necessary notice of the proposed amendment and the submission thereof will compel the city to incur an indebtedness of at least $500, and it is argued that, under the constitution of the state, the legislature cannot compel the city council to incur a debt; whereas, under the said act of 1903, the city will be compelled to incur a debt every time a petition properly signed, together with a proposed amendment, shall be presented, and that, too, regardless of the consent of the corporate authorities, the mayor and council. In this connection appellants invoke the provisions of art. 11, § 12, of the state constitution, the section being as follows:

"The legislature shall have no power to impose taxes upon counties, cities, towns, or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes."

It is contended that the act of 1903 violates the above provision, in that it attempts to vest in other than the corporate authorities the power to create a debt or impose a tax, even against the will of the corporate authorities.

Respondent insists that appellants occupy the position of mere ministerial officers, and that in a mandamus proceeding such officers are not entitled to raise the question of the constitutionality of a statute which defines the duty sought to be enforced. The authorities are much in conflict upon this subject. No decision of this court has been called to our attention where the actual right to raise such a constitutional question in a mandamus case was discussed, but this court has passed upon the constitutional question in a mandamus case. *State ex rel. Olmstead v. Mudgett,* 21 Wash. 99, 57 Pac. 351. We prefer to follow the authorities which hold that the constitutional question may be raised even in mandamus proceedings, for the reason that such a rule leads to the immediate settlement of the question without repeated litigation.

It is the evident policy of the state constitution that the charters of cities of the first class and amendments thereto shall be subject to the control of general laws. Const., art. 11, § 10. The power is vested in the people to adopt their own charter, and also to amend it; but the matter is subject to the control of general laws. By the act in question, the legislature has, by a general law, simply designated a method by which the charter may be amended. The adoption of a charter or the amendment thereof is the act of the people, and not of the corporate authorities. It involves a power which is superior to that of the corporate authorities, and there must be some reasonable method by which that power can be exercised independently of the will of the constituted authorities. We think the constitutional provision invoked by appellants must be held to relate to the imposition of taxes concerning ordinary corporate affairs incidental to the existence of the organized corporation. To hold that it relates also to the expense of an amendment to the organic law of the city would place it within the power of the corporate authorities to perpetually prevent the people from exercising a fundamental power. The power resides with the people, its

exercise may be in the manner provided by general laws, and the expense thereof is not necessarily at the will of the corporate authorities, as in the case of ordinary obligations incurred by the corporate government. We therefore hold that the act is not unconstitutional in the particular above discussed. We think, also, that the objection to the title of the act is not well taken.

It is next urged that the proposed charter amendment would operate to delegate legislative power to the people, which is now vested in the mayor and city council. The proposed amendment provides that, whenever any ordinance granting or amending any franchise for gas, electric light, water, telephone, or telegraph purposes, shall have been introduced, then the council may, and upon the presentation of a petition signed by the electors of the city equal in number to fifteen per cent of the entire vote cast at the last municipal election, the council shall submit to a vote of the people the question of the adoption of the franchise; and if a majority of the qualified voters voting thereon at the election shall approve the ordinance, it shall take effect; but otherwise it shall be defeated. It is contended that the granting of a franchise is the exercise of a legislative function, and that the proposed amendment divests the mayor and the council of the power to exercise it. This contention is based upon the statute as found in Bal. Code, § 740, which provides that the legislative powers shall be vested in a mayor and city council. Speaking, however, with reference to the powers of the mayor and council, the same section says, "to have such powers as may be provided for in its charter." It is clear, therefore, that the powers of the mayor and council are such as are granted by the charter. If the people choose to provide in their charter that the power to grant franchises of a given character shall not be given wholly to the mayor and council, but shall be reserved to themselves, can it be said that the granting thereof is such a legislative act as cannot be exercised by the people themselves? The

power to make a charter is in a sense a legislative one. It is well known that charters so made often contain much that is legislative in its nature, such as the adoption of a complete scheme for making special assessments and other similar elaborate and detailed provisions. It is practically conceded by appellants that, if the statute, § 740, *supra*, were not in existence, it would lie with the people to discharge legislative functions. It is contended, however, that the statute is in full force, and that it is prohibitive of legislation in any manner except by the mayor and council. It is argued that the act of 1903 in no way affects the provisions of said § 740. It is true the act does not refer to the former statute, but if it reaches the same subject it should be held to affect the older statute in so far as it treats of the same subject. The later act provides that charters may be amended in the manner outlined, "providing for any matter within the realm of local affairs or municipal business." The terms could not be broader and, if the former statute can be said to have vested the power to legislate with respect to franchises exclusively in the mayor and council, the later one authorizes the people to reserve that power to themselves, since they may amend the charter providing for any matter "within the realm of local affairs." It has been held that the granting of such privileges as are mentioned in the proposed amendment rests in contract or license in the nature of a local easement. *Maybury v. Mutual Gas Light Co.*, 38 Mich. 154. We therefore believe that the power to grant such privileges rests with the people, if they so provide in their charter. The proposed amendment seeks to do this, and we think it is not invalid for the reason discussed.

Referring now to the issue made by the answer, that the petitions to submit the proposed amendment did not contain the requisite number of qaulified voters, we find that appellants in their briefs have discussed much the subject of registration as pertinent to the qualification of a voter. They maintain that the term "qualified voters," as used in the

statute of 1903, necessarily means such only as have duly registered during a current year. Article 6, § 1, of the state constitution, defines who are qualified voters as follows:

"All male persons of the age of twenty-one years or over, possessing the following qualifications, shall be entitled to vote at all elections. They shall be citizens of the United States; they shall have lived in the state one year, and in the county ninety days, and in the city, town, ward or precinct thirty days immediately preceding the election at which they offer to vote; they shall be able to read and speak the English language; . . ."

It will be seen that registration is not an element entering into the definition of a qualified voter. It is held by eminent authority that registration laws cannot be justly regarded as adding a new qualification to those prescribed by the constitution, but that they are merely reasonable and convenient regulations prescribing the mode of exercising the right to vote. *Capen v. Foster,* 12 Pick. 485, 23 Am. Dec. 632; *State ex rel. Stearns v. Corner,* 22 Neb. 265, 3 Am. St. 267; *State v. Butts,* 31 Kan. 537, 2 Pac. 618; *People v. Hoffman,* 116 Ill. 587, 5 N. E. 596, 8 N. E. 788, 56 Am. Rep. 793; *Edmonds v. Banbury,* 28 Iowa 267, 4 Am. Rep. 177; Cooley, Const. Lim. (6th ed.), 757. In harmony with the foregoing and other authorities which might be cited, it is held here that registration is not a necessary element in a qualification of a voter to entitle him to sign a petition under the aforesaid act of 1903.

Appellants, however, urge that, under their answer and without regard to the question of registration, the issue was made that the petitions were lacking in the requisite number of qualified voters. The issue is so squarely made, both by the denials and by affirmative allegations. The court, at the time of the trial, sustained a demurrer which was then orally interposed and which was stated by counsel as going to the whole answer. The court seemed to be of the view that appellants were not entitled to raise any issue as against

the sufficiency of the petitions. The only proof required on the part of the relator was the identification of the petitions as having been filed with the city clerk. No proof was required or made as to the qualifications of the signers of the petitions, although the averments of relator's affidavit in that regard were denied. It is true the petitions were verified by appended affidavits, stating that the signers were qualified voters; but that was the statement of a mere conclusion not based upon any stated facts. And, moreover, the statute of 1903 does not authorize such a verification. It provides that the verification shall go only to the genuineness of the signatures. The affidavits were, therefore, not competent proof of the qualification of the signers. The statute provides no method for determining the qualification of the petitioners. It must follow, therefore, that it lies with the city council, whose action in the premises is invoked, to determine that question in some reasonable manner, and within a reasonable time. Clearly the statute does not intend that the council shall submit the amendment until the fact exists that the necessary number of qualified voters have petitioned. Some one must determine that fact, and under the statute it must lie with the council to pass upon it in the first instance. It is generally held, under similar statutes, that it is the duty of the body to whom petitions for the submission of questions to the voters are presented to carefully scrutinize, examine, and determine as to the number and qualification of the signers before putting the people to the expense of an election. *Ayres v. Moan,* 34 Neb. 210, 51 N. W. 830, 15 L. R. A. 501; *La Londe v. Board of Supervisors,* 80 Wis. 380, 49 N. W. 960; *Dutten v. Hanover,* 42 Ohio St. 215; *State v. Eggleston,* 34 Kan. 714, 10 Pac. 3.

The answer not only put in issue the qualification of the requisite number of voters, but also alleged that many signatures were obtained through fraudulent representation; that

3—42 WASH.

the signers did not understand the effect of what they signed, and that the verifications of the petitions as to the genuineness of the signatures were made by persons who neither knew the signatures nor the persons. It is argued that the council were not acting in good faith, and that they were unnecessarily delaying action. The record does not present such features as would warrant us in saying that such was the fact. In any event, when the matter came on for trial, the court should have heard such evidence as they were prepared to offer in support of the issues which they tendered. With the issues thus standing, the court did not direct appellants to proceed to act and investigate the necessary preliminary facts, but ordered them to submit the amendment to a vote without regard to any ascertainment of such facts. In short, the record as it stands discloses that appellants stood ready to show to the court that the petitions were not such as the law requires, but they were denied the right to do so. Such was, we think, clearly error.

We are therefore confronted with the problem as to what disposition should be made of the case under all the circumstances. We have passed upon and settled all questions raised in the case, except as to the issue upon the sufficiency and validity of the petitions. It is conceded that upon those petitions the amendment was submitted to a vote of the people and was carried. The situation is therefore one of public interest. The expense of an election has been incurred, and if the petitions for the submission were valid, the vote upon the amendment was effective. We have, therefore, decided that we shall directly neither affirm nor reverse the judgment which ordered the writ of mandate, but the cause is remanded with instructions to take testimony upon the necessary facts concerning the validity of the petitions, and to enter findings thereon. If the findings shall establish facts showing that the petitions were in compliance with the law, then an order shall be entered confirming and ratifying the one originally

made. But if the facts shall be found otherwise, the judgment shall be vacated, and the action dismissed.

MOUNT, C. J., CROW, DUNBAR, and ROOT, JJ., concur.